# Exhibit A

October 6, 2023ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,
A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

DON BIVENS (*pro hac vice forthcoming*)
don@donbivens.com
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

*Attorneys for Plaintiffs*
Joseph Hirlinger and Guy Ball

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**10/06/2023**
**Clerk of the Court**
BY: KALENE APOLONIO
Deputy Clerk

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**CGC-23-609585**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JOSEPH HIRLINGER and GUY BALL, individually and on behalf of classes of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>WP COMPANY LLC.; and DOES 1 through 100, inclusive,<br><br>Defendants | Case No:<br><br>CLASS ACTION<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiffs Joseph Hirlinger and Guy Ball ("Plaintiffs"), on behalf of themselves and classes of similarly situated individuals defined below, allege on information and belief as follows:

**INTRODUCTION**

1.      WP COMPANY LLC ("Defendant" or "WP" or "The Washington Post") is a national newspaper publishing company.  WP has an online e-commerce website where it sells digital subscriptions to its newspaper, *The Washington Post*.  This is a class action lawsuit against WP for its business practice of advertising newspaper subscriptions with fictitious reference pricing and corresponding phantom discounts on its website, https://subscribe.washingtonpost.com/.

2.      The practice of false reference pricing occurs when a company fabricates a fake regular, original or former reference price and then offers the item for "sale" at a purported sale price that is deeply discounted from the fabricated reference price.  In these situations, the deeply discounted price is not, in fact, a "discount" because it is the price at or near which the item customarily is sold.

3.      To sell more subscriptions and increase its profits, WP engages in a systematic and pervasive false-reference pricing scheme.  It does so on its website by deceptively advertising digital subscriptions at prices that are designed to give the impression that the subscriptions are on sale and that they usually are sold at substantially higher prices.  In reality, the subscriptions continuously are sold by WP on its website at or near the falsely claimed "sale" price and never or almost never are sold at the purported regular and customary price.  The digital subscriptions that WP advertised and continues to advertise on its website as discounted from false reference prices are referred to in this complaint as the "Falsely Discounted Subscriptions."[1]

4.      WP's deceptive pricing scheme misled reasonable consumers, including Plaintiffs, into believing that the value of the Falsely Discounted Subscriptions was substantially higher than

---

[1] The term "Falsely Discounted Subscriptions" encompasses several types of digital subscriptions offered by WP during the liability period.  WP offers "All-Access Digital" and "Premium Digital" subscriptions on a monthly or an annual basis.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

their fair market value.  Specifically, WP implemented the deceptive pricing scheme on its website by displaying false reference prices as strikethrough prices (*e.g.*, "~~$120~~") alongside substantially lower prices, thereby giving the false impression that the lower prices were discounted from the strikethrough reference prices.

5.     The strikethrough reference prices are misleading because they do not represent the actual prices at which WP regularly sold or sells the Falsely Discounted Subscriptions.  For an unreasonably extended period of time, *i.e.*, from at least as far back as January 2021, if not earlier, WP has advertised and sold the Falsely Discounted Subscriptions at the purportedly discounted prices, not at the strikethrough reference prices.

6.     Thus, the purported discounts are fictitious because they do not represent actual savings obtained by consumers.  Further, any portrayal of the discounted prices as a "deal" or as a savings off the normal price or some type of special introductory offer is illusory because the prices offered were, in reality, the usual prices advertised on WP's website.  The unlawful and unfair false reference pricing practice artificially increases demand for WP's Falsely Discounted Subscriptions and induces customers to purchase the subscriptions based on a false impression of their value and perceived savings and the implied importance of subscribing now rather than later.

7.     There was nothing in WP's pricing, advertising, marketing or other materials that would indicate to a reasonable consumer that the reference prices were anything other than a legitimate discount off the regular and customary prices at which WP sold and sells the Falsely Discounted Subscriptions on its website.  Thus, a reasonable consumer would believe that the sale prices that WP displayed for digital subscriptions were a discount and savings from WP's usual selling prices for the offered subscriptions.

8.     By engaging in its illicit pricing scheme, WP has violated California, the District of Columbia, and federal consumer protection laws.  For example, California's Consumers Legal Remedies Act ("CLRA") prohibits making "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions."[2]

---

[2] Cal. Civ. Code § 1770(a)(13).

9. The District of Columbia's Consumer Protection Procedures Act ("CPPA") prohibits trade practices that "make false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to the price of competitors or one's own price at a past or future time" or that "falsely state the reasons for offering or supplying goods or services at sale or discount prices."[3]

10. Further, the Federal Trade Commission's ("FTC") Guide Against Deceptive Pricing states:

> Where … the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.[4]

11. WP willfully violated these laws. In June 2021, for example, Plaintiff Hirlinger purchased an annual All-Access Digital Subscription on WP's website. Plaintiff Hirlinger's purchase was in response to a WP advertisement for an annual All-Access Digital Subscription at the price of $40 for one year. Right next to the $40 price, the advertisement displayed a higher reference price in strikethrough typeface: ($100). Defendant's use of the strikethrough price clearly was intended to convey to a reasonable consumer the prospect of a $60 savings from WP's regular annual All-Access Digital Subscription price. When he made his purchase, Plaintiff Hirlinger believed that he was buying an annual All-Access Digital Subscription that was valued at and regularly sold for $100.

12. In February 2023, Plaintiff Ball purchased an annual All-Access Digital Subscription on WP's website. Plaintiff Ball's purchase was in response to a WP advertisement for an annual All-Access Digital Subscription at the price of $40 for one year. Right next to the $40 price, the advertisement displayed a higher reference price in strikethrough typeface: ("$120). Defendant's use of the strikethrough price clearly was intended to convey to a reasonable

---

[3] D.C. Code §§ 28-3904(j) and (l); *see also*, §§ 28-3904(e) and (f).

[4] 16 C.F.R. 233.1(a).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

consumer an $80 savings from WP's purported regular annual All-Access Digital Subscription price.

13.     But discovery will show that, in the weeks and months before and after Plaintiffs' purchases, WP never or almost never actually advertised any of its digital subscriptions at the strikethrough price shown in the advertisement.  Pricing data compiled by Plaintiffs' counsel demonstrates as much:

**November 25, 2021**

The Washington Post



# Best. Deal. Ever.

For a limited time, get a whole year of The Washington Post
for just ~~$10~~ **99¢ every four weeks**.
You can cancel anytime.

*Special offer*
Monthly plans | Yearly plans



### All-Access Digital

**~~$100~~ $9.99 for one year**

✓ **Unlimited access** on the web and in our apps
✓ **24/7** live news updates
✓ Most comprehensive **political and international coverage**
✓ Groundbreaking **interactive stories**

### Premium Digital

**~~$150~~ $9.99 for one year**

✓ Every **All-Access Digital** feature

PLUS

✓ A **bonus subscription** to share
✓ Monthly **30-day digital passes** to share
✓ **Exclusive eBooks** written by our journalists

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**November 25, 2021**



**The Washington Post**

BLACK FRIDAY | ENDS SOON

## Best. Deal. Ever.

For a limited time, get a whole year of The Washington Post
for just $10 99¢ every four weeks.
You can cancel anytime.

*Special offer*
Monthly plans | Yearly plans

### All-Access Digital

$10 99¢ every four weeks

✓ **Unlimited access** on the web and in our apps

✓ **24/7** live news updates

✓ Most comprehensive **political and international coverage**

✓ Groundbreaking **interactive stories**

### Premium Digital

$15 99¢ every four weeks

✓ Every **All-Access Digital** feature

PLUS

✓ A **bonus subscription** to share

✓ Monthly **30-day digital passes** to share

✓ **Exclusive eBooks** written by our journalists

**December 19, 2021**



**The Washington Post**

## Choose your plan.

You can **cancel anytime.**

Monthly plans | *Best value* Yearly plans

### All-Access Digital

Subscribe for $100 $40 for one year

✓ **Unlimited access** on the web and in our apps

✓ **24/7** live news updates

✓ Most comprehensive **political and international coverage**

✓ Groundbreaking **interactive stories**

### Premium Digital

Subscribe for $150 $60 for one year

✓ Every **All-Access Digital** feature

PLUS

✓ A **bonus subscription** to share

✓ Monthly **30-day digital passes** to share

✓ **Exclusive eBooks** written by our journalists

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

## December 19, 2021

2



3

*The Washington Post*

4

5

# Choose your plan.

6

You can **cancel anytime**.

7

Monthly plans | *Best value* Yearly plans

8

### All-Access Digital

### Premium Digital

9

Subscribe for $10 **$4 every four weeks**

Subscribe for $15 **$6 every four weeks**

10

✓ **Unlimited access** on the web and in our apps

✓ Every **All-Access Digital** feature

11

✓ **24/7** live news updates

PLUS

12

✓ Most comprehensive **political and international** coverage

✓ A **bonus subscription** to share

✓ Monthly **30-day digital passes** to share

13

✓ Groundbreaking **interactive stories**

✓ **Exclusive eBooks** written by our journalists

14

15

## February 15, 2022

16



*The Washington Post*

17

18

# Choose your plan.

19

You can **cancel anytime**.

20

Monthly plans | *Best value* Yearly plans

21

### All-Access Digital

### Premium Digital

22

Subscribe for $100 **$40 for one year**

Subscribe for $150 **$60 for one year**

23

✓ **Unlimited access** on the web and in our apps

✓ Every **All-Access Digital** feature

✓ **24/7** live news updates

PLUS

24

✓ Most comprehensive **political and international** coverage

✓ A **bonus subscription** to share

✓ Monthly **30-day digital passes** to share

✓ Groundbreaking **interactive stories**

✓ **Exclusive eBooks** written by our journalists

25

26

27

28

**February 15, 2022**



14.     By using misleading strikethrough prices as an artifice to increase the perceived value of the Falsely Discounted Subscriptions that it sells, WP harms its customers in at least two ways: (a) by inducing them to pay more for WP's products than they otherwise would pay; and (b) by inducing them to make purchases that they otherwise would not have made.

15.     WP's deceptive strikethrough prices also harm competition by giving WP an unfair advantage over other news publishing companies that do not engage in false reference pricing when they sell digital subscriptions or subscriptions generally.  Consumers are more likely to purchase a $40 subscription advertised as being sold at 60% or more off of its the regular price than they are to pay the same $40 for an honestly-represented full price subscription.  WP practices that deception because it works, *i.e.*, it succeeds in misleading consumers.

16.     WP advertises misleading strikethrough prices and sale prices for its Falsely Discounted Subscriptions on its website every day – a consistency that puts the lie to any assertion that the prices are bona fide "sale" prices.  The pervasive and ongoing nature of WP's deceptive false-reference-pricing scheme demonstrates that the scheme is central to WP's overall marketing strategy.

17.     In bringing this lawsuit, Plaintiffs intend to curb these and other unlawful and deceptive advertising practices on WP's website and seek compensation for themselves and all

others similarly situated who have been misled by WP's false and misleading advertising.

**PARTIES**

18.     Plaintiff Joseph Hirlinger is an individual and a resident of California.

19.     Plaintiff Guy Ball is an individual and a resident of California.

20.     Defendant WP Company LLC, headquartered in Washington D.C., is a Delaware limited liability company that systematically and continuously does business throughout the United States, including in California and with California residents, and including those in San Francisco County.   From its headquarters in the District of Columbia, WP Company LLC publishes *The Washington Post* newspaper and markets, advertises and sells subscriptions to online and print editions of *The Washington Post* to consumers in California and throughout the United States.

21.     Plaintiffs are ignorant of the true names and capacities of defendants sued as DOES 1 through 100, inclusive, and therefore sue those defendants by those fictitious names. Plaintiffs will amend this complaint to allege those defendants' true names and capacities when they are ascertained.  Plaintiffs are informed and believe and, on that ground, allege that each of the fictitiously-named defendants is responsible in some manner for the occurrences alleged and that Plaintiffs' injuries and damages, as alleged, are proximately caused by those occurrences.

22.     Plaintiffs are informed and believe and on that ground allege that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants as to be liable for their conduct with respect to the matters alleged below.  Plaintiffs are informed and believe and, on that ground, allege that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that each knew or should have known about and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all Defendants.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action under California Business & Professions Code §§ 17200, *et seq.*, and 17500, *et seq.*, and under California Civil Code §§ 1770 and 1780.

24.     This Court has personal jurisdiction over the parties because Defendant continuously and systematically conducts business in the State of California, including in San Francisco County.  Likewise, Plaintiffs' rights were violated in the State of California and arose out of their contact with Defendant from within California.

25.     Venue is proper in this Court because California Code of Civil Procedure §§ 395 and 395.5, and case law interpreting those sections, provide that if a foreign business entity fails to designate with the office of the California Secretary of State a principal place of business in California, it is subject to being sued in any county in the state that a plaintiff desires.  On information and belief, as of the filing date of this Complaint, Defendant is a foreign business entity that has failed to designate a principal place of business in California with the office of the Secretary of State.

26.     Venue also is proper under California Civil Code § 1780(d), as Defendant does business in this County.

## FACTUAL ALLEGATIONS

**A.     Background of the E-Commerce Market for Digital Subscriptions and WP's Digital Subscriptions**

27.     The market for e-commerce subscriptions is thriving. "The global subscription e-commerce market size" was "$72.91 billion in 2021" and "is expected to reach $904.2 billion by 2026."[5]   Newspapers and magazines were early adopters, utilizing the digital subscription business model "as a tactic …to entice readers."[6]

---

[5] Wertz, Jia, "The Growth of Subscription Commerce," *Forbes*, July 15, 2022, at https://www.forbes.com/sites/jiawertz/2022/07/15/the-growth-of-subscription-commerce/?sh=63e2acaeb572.

[6] *Id.* ("Digital subscriptions have become an increasingly popular revenue model used among publishers …").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

28.     WP is a national newspaper publishing company headquartered in Washington D.C that markets, advertises and sells *The Washington Post* digital subscriptions over the internet through its online e-commerce website, https://subscribe.washingtonpost.com/.

29.     In 2013, Amazon founder Jeff Bezos purchased The Washington Post for $250 million.[7]  The same year that Bezos purchased it, WP began using the digital subscription model, distancing itself from reliance on ad revenue and targeting online subscription revenue instead.[8] Since then, WP "has been focused on signing up as many paying subscribers as possible,"[9] a strategy that has proven effective.  By 2016, under Bezos' ownership, and due at least in part to the practices that are the subject of this complaint, WP transformed itself from a nationally recognized but financially struggling "print-focused publication" into a profitable, "globally recognized digital brand."[10]

30.     Even when WP experienced a dip in profitability and readership around 2021-2022, WP focused on increasing its numbers of digital subscribers as its strategy to regain its

---

[7] Giulinia-Hoffman, Francesca, "How the Washington Post has Changed Under Jeff Bezos," *CNN Business*, August 16, 2019, at https://www.cnn.com/2019/08/16/media/jeff-bezos-donald-graham/index.html.

[8] Veseling, Brian, "Washington Post puts Emphasis on Creating Paths to Subscriptions," *World Association of New Publishers/IFRA*, July 30, 2018, at https://wan-ifra.org/2018/07/washington-post-puts-emphasis-on-creating-paths-to-subscription/ (quoting Miki Toliver King, Vice President of Marketing at The Washington Post

[9] Stelter, Brian, "Washington Post digital subscriptions soar past 1 million mark," *CNNMoney*, Sep. 26, 2017, at https://money.cnn.com/2017/09/26/media/washington-post-digital-subscriptions/index.html; *see also*, "How The Washington Post is reorienting for digital subscriptions," *Digiday*, Nov. 29, 2018, at https://digiday.com/media/washington-post-digital-subscriptions-reorienting/ ("'Publishers focused on building a subscriber base need someone who can connect marketing, technology and audience together.' That shift has been pronounced at the [Washington] Post, where everything, including its advertising innovations, must be weighed against the publisher's pursuit of subscriber growth.") (emphasis added); "Bezos, The Digital Midas. Turning Around the Washington Post," *HBS Digital Initiative*, Feb. 1, 2018, available at https://digital.hbs.edu/platform-digit/submission/bezos-the-digital-midas-turning-around-the-washington-post/#_ftnref5 (discussing WP's focus on building its paid digital subscriber base.)

[10] Giulinia-Hoffman, Francesca, "How the Washington Post has Changed Under Jeff Bezos," *CNN Business*, August 16, 2019, at https://www.cnn.com/2019/08/16/media/jeff-bezos-donald-graham/index.html.

---

financial footing.[11]

31.     As of September 2023, WP maintains a substantial amount of traffic to its websites.   According to a third-party website-traffic monitoring site, WP's digital content website, https://www.washingtonpost.com/, receives an average of 29.7 million visits per month, and WP's subscription website, https://subscribe.washingtonpost.com/, receives an average of more than 52,715 visits per month.[12]

32.     Defendant's online success has resulted in significant part from advertising misleading strikethrough prices and illusory introductory offers.

**B.     WP's Pricing Scheme**

33.     By advertising false and misleading reference prices and sale prices, WP creates an illusion that consumers can save money by purchasing a digital newspaper subscription – either the All-Access Digital or Premium Digital subscriptions – on its website.

34.     WP perpetrates its pricing scheme by including in its advertising a strikethrough price – *i.e.*, the subscription's purported full, non-discounted price – which it typically displays in strikethrough typeface (*e.g.*, "$100" or "$120").   Adjacent to the strikethrough price, WP advertises a lower price – effectively a purported "sale" price – which is just the price at which it regularly sells the digital subscription.   WP typically displays the strikethrough price and the lower price for each Digital Subscription in a bright blue "button" with contrasting white font. Below are several examples of how WP advertises fictitious savings and illusory introductory offers on its website.

---

[11] Mullin, Benjamin and Robertson, Katie, "Frustrations Mount at Washington Post as its Business Struggles," *The New York Times*, August 30, 2022, at https://www.nytimes.com/2022/08/30/business/media/washington-post-jeff-bezos-revenue.html.

[12] https://neilpatel.com/website-traffic-checker/.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

### November 25, 2021

The Washington Post

BLACK FRIDAY | ENDS SOON

# Best. Deal. Ever.

For a limited time, get a whole year of The Washington Post
for just ~~$10~~ 99¢ every four weeks.
You can cancel anytime.

*Special offer*
Monthly plans    Yearly plans

### All-Access Digital

~~$10~~ 99¢ every four weeks

✓ **Unlimited access** on the web and in our apps
✓ **24/7** live news updates
✓ Most comprehensive **political and international coverage**
✓ Groundbreaking **interactive stories**

### Premium Digital

~~$15~~ 99¢ every four weeks

✓ Every **All-Access Digital** feature

PLUS

✓ A **bonus subscription** to share
✓ Monthly **30-day digital passes** to share
✓ **Exclusive eBooks** written by our journalists

### February 15, 2022

The Washington Post

# Choose your plan.

You can **cancel anytime.**

Monthly plans    *Best value* Yearly plans

### All-Access Digital

Subscribe for ~~$10~~ $4 every four weeks

✓ **Unlimited access** on the web and in our apps
✓ **24/7** live news updates
✓ Most comprehensive **political and international coverage**
✓ Groundbreaking **interactive stories**

### Premium Digital

Subscribe for ~~$15~~ $6 every four weeks

✓ Every **All-Access Digital** feature

PLUS

✓ A **bonus subscription** to share
✓ Monthly **30-day digital passes** to share
✓ **Exclusive eBooks** written by our journalists

---

COMPLAINT                                    13                                    CASE NO.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

35.     The pricing scheme appears on the WP's subscription website.  Consumers who view a pop-up ad or are interested in a WP subscription are brought to that webpage when, for example, they click the "Subscribe" button on the general WP website or the link that results from a Google search for WP subscription, *i.e.*, https://subscribe.washingtonpost.com/.  Even simply trying to access a *Washington Post* article online without a subscription leads to that website.

36.     Discovery will show that, for many years, WP continuously has offered the Falsely Discounted Subscriptions at the purported sale prices.  Discovery also will show that the strikethrough prices shown on WP's website do not represent the actual prices at which WP sells or has sold the digital subscriptions on its website for at least the past three years, if not longer.

37.     Because it misleads consumers about the existence and amounts of WP's purported price reductions, WP's pricing scheme violates California and District of Columbia law.  Its pricing scheme is misleading because it creates the false impression that a consumer is buying or has an opportunity to buy a digital newspaper subscription at a discount from its usual selling price, *i.e.*, a discount from the advertised strikethrough price, and is saving money by purchasing, at a discounted price, a subscription valued at the strikethrough price.  In fact, the purported "savings" advertised by WP on its subscription website do not represent any savings that Plaintiffs and reasonable consumers actually receive because the "sale" price is, in reality, just WP's regular selling price.

**C.      The Ongoing Nature of WP's Deceptive Pricing**

38.     On October 5, 2023, Plaintiffs' counsel sent WP a pre-suit demand letter that notified WP of its unlawful and deceptive marketing practices.  Although WP received the letter, it continues to advertise misleading strikethrough reference prices alongside the purported discount prices on its website.

**Reasonable Consumer Standard**

39.     The "reasonable consumer" standard applies to California False Advertising Law ("FAL") claims, Unfair Competition Law ("UCL") claims[13] and CLRA claims[14] as well as

---

[13] Cal. Bus. & Prof. Code §§ 17500, *et seq.*; *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950-51 (2002).

District of Columbia CPPA claims.[15]

40.     A "reasonable consumer" is an ordinary consumer acting reasonably under the circumstances.[16]   Such a consumer "need not be exceptionally 'acute and sophisticated,'" nor must the consumer "necessarily be wary or suspicious of advertising claims."[17]

41.     To meet the reasonable consumer standard, "a plaintiff need only show that members of the public are likely to be deceived" by the defendant's advertising.[18]   Members of the public are likely to be deceived by advertising that is false and by advertising that, "although true, is either actually misleading or…has a capacity, likelihood, or tendency to deceive or confuse the public."[19]

42.     As the U.S. Supreme Court has long recognized:

> ***"Advertisements as a whole may be completely misleading although every sentence separately considered is literally true.*** This may be because things are omitted that should be said, or because advertisements are composed or purposefully printed in such way as to mislead.  [Citations.]  *That exceptionally acute and sophisticated readers might have been able by penetrating analysis to have deciphered the true nature of the contest's terms is not sufficient to bar findings of fraud by a factfinding tribunal. Questions of fraud may be determined in the light of the effect advertisements would most probably*

---

[14] Cal. Civ. Code § 1770; *Aron v. U-Haul Co. of California*, 143 Cal.App.4th 796, 806 (2006) applying reasonable consumer standard in concluding that the plaintiff adequately pleaded UCL and CLRA claims); *Carvalho v. HP, Inc.*, No. 21-cv-08015-BLF, 2022 U.S. Dist. LEXIS 229179, at *20-21  (N.D. Cal. Dec. 20, 2022) (same regarding FAL, UCL and CLRA claims based on false strikethrough pricing allegations); *see also, e.g., Inga v. Bellacor,* No. 2:19-cv-10406-MWF-MRW, 2020 U.S. Dist. LEXIS 188297, at *6 (C.D. Cal. July 17, 2020) (similar), citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

[15] D.C. Code § 28-3904; *Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D.D.C. 2010) ("'[A] claim of an unfair trade practice under the CPPA is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer.[,]'") quoting *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008) (original alterations omitted); *Lee v. Can. Goose US, Inc.*, 2021 U.S. Dist. LEXIS 121084, *14 (S.D.N.Y June 29, 2021) (same), citing *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013) and *Pearson, supra*, 961 A.2d at 1075.

[16] *Skinner v. Ken's Foods, Inc.*, 53 Cal.App.5th 938, 948 (2020), citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682 (2006).

[17] *Id.*, citing *Lavie v. Proctor & Gamble Co.*, 105 Cal.App.4th 496, 509-10 (2003).

[18] *Colgan, supra*, 135 Cal.App.4th at 682.

[19] *Kasky, supra*, 27 Cal.4th at 951; *see also, Williams, supra*, 552 F.3d at 939, quoting *Kasky, supra*, 27 Cal.4th at 951.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*produce on ordinary minds.* [Citations.] ***People have a right to assume that fraudulent advertising traps will not be laid to ensnare them. 'Laws are made to protect the trusting as well as the suspicious.'***[20]

43.     Reasonable consumers are not expected to undertake an investigation and make a one-to-one comparison of various competing products.[21]   As the Ninth Circuit has found:

> Most consumers have, at some point, purchased merchandise that was marketed as being "on sale" because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down "sale" price. Because such practices are misleading—and effective—the California legislature has prohibited them."[22]

44.     ***A reasonable consumer is entitled to*** "expect others to behave reasonably well," and is permitted to ***be unwary or trusting***."[23]   ***If "a person of ordinary intelligence could reasonably be deceived or confused, that is all that is required***."[24]

45.     Representations "may not be misleading in isolation, but are deceptive when considering the … advertisement as a whole."[25]   Thus, a "perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable."[26]

---

[20] *Donaldson v. Read Magazine*, 333 U.S. 178, 188-189 (1948) (emphasis added).

[21] *See, e.g., Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954 DDP (MANx), 2014 U.S. Dist. LEXIS 117587, at *8-9 (C.D. Cal. Aug. 22, 2014).

[22] *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

[23] *Lavie*, *supra*, 105 Cal.App.4th at 505-06.

[24] *Brockey v. Moore*, 107 Cal.App.4th 86, 100 (2003), citing *Hair v. McGuire*, 188 Cal.App.2d 348, 353 (1961).

[25] *Mullins v. Premier Nutrition Corp.*, 178 F.Supp.3d 867, 889 (N.D. Cal. 2016).  *See also*, *Lima v. Gateway, Inc.*, 710 F.Supp.2d 1000, 1007 (C.D. Cal. 2010) (finding that statements "cannot be considered in isolation because they contribute to the deceptive context of the advertising as a whole").

[26] *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332-333 (1998); *Aron*, *supra*, 143 Cal.App.4th at 807 (same).  *See also*, *Shaeffer v. Califia Farms, LLC*, 44 Cal.App.5th 1125, 1138 (2020) (finding that **"statements which, while literally true or ambiguous, convey a false impression or are misleading in context, as demonstrated by actual consumer confusion" are actionable**. (emphasis added)), citing *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**D.      Defendant's False Advertising Occurs Outside of WP's Terms of Service**

46.      To purchase a Falsely Discounted Subscription, consumers click on one of the blue buttons on the WP subscription website's main landing page.  That is what Plaintiffs did. From there, consumers are taken to a second webpage on which WP instructs consumers to sign up by entering their email address, after which they are able to enter their payment information.

47.      Before an email address is entered, the payment information and hyperlinks to WP's Terms of Service are grayed out and inaccessible.  Only after an email address is entered do the payment section and hyperlinks to WP's Terms of Service become accessible.



48.      The Terms of Service state that they apply to the person's "use" of WP's services provided by WP's website and apps.  Those terms also state that consumers who do not agree to the Terms of Service should not "access" or "use" WP's services.

49.      WP's subscription website page that advertises the sale prices and the misleading strikethrough reference prices has no hyperlinks to the Terms of Service.

50.      Thus, when Plaintiffs viewed the deceptive sale price information and made the decision to purchase a digital subscription, they had no notice– actual, constructive or inquiry – of WP's Terms of Service.  *See* screenshots at ¶ 46.  Further, even after Plaintiffs clicked the link to purchase a subscription, the hyperlink to the Terms of Service could not (and to this day cannot) be accessed right away.  Under those circumstances, Plaintiffs were not bound by or parties to

any agreement when WP's false advertising violations occurred.

51.     Moreover, even if a court were to find that the Terms of Service applied to the false advertising on the first page of WP's subscription website, the Terms of Service contain a Governing Law clause stating that the laws of the United States and the District of Columbia govern the agreement.  If a court were to find that that Governing Law clause applied, the District of Columbia's CPPA would apply to all consumers nationwide.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action under California Code of Civil Procedure § 382 on behalf of themselves and all others similarly situated.  The California Class and the Nationwide Class (the "Classes") are defined as follows:

> **California Class:** All California residents who purchased one or more of *The Washington Post* digital subscriptions that were advertised on The Washington Post's website as discounted from a strikethrough reference price and who made that purchase on The Washington Post's website while located in California at any time on or after the start of the applicable limitations period preceding the filing of the Complaint in this matter.

> **Nationwide Class:** All United States residents who purchased one or more of *The Washington Post* digital subscriptions that were advertised on The Washington Post's website as discounted from a strikethrough reference price and who made that purchase on The Washington Post's website while located in the United States at any time on or after the start of the applicable limitations period preceding the filing of the Complaint in this matter.

53.     Excluded from the Classes are employees of The Washington Post and all judges assigned to hear any aspect of this litigation, as well as their staff members and immediate family members.

54.     The Classes that Plaintiffs seek to represent contain numerous members and are ascertainable.  Plaintiffs reserve the right to amend or modify the class definitions and/or to add subclasses or limitations to particular issues.

55.     By its unlawful actions, Defendant has violated California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.* and California Civil Code § 1770.  The questions raised, therefore, are of common or general interest to the California Class members, who have a well-defined community of interest in the questions of law and fact raised in this action.

56.     By its unlawful actions, Defendant also has violated the District of Columbia

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq*. (the "CPPA").   The questions raised, therefore, are of common or general interest to the Nationwide Class members, who have a well-defined community of interest in the questions of law and fact raised in this action.

57.    Plaintiffs' claims are typical of those of the Classes, as Plaintiffs now suffer and have suffered from the same violations of the law as other putative Class members.  Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions to represent them and the Classes, and Plaintiffs will fairly and adequately represent the interests of the Classes.

**Numerosity**

58.    Based on information and belief, each Class consists of at least 100 individuals, making joinder of individual cases impracticable.

**Typicality**

59.    Plaintiffs' claims are typical of the claims of all of the other members of the Classes.  Plaintiffs' claims and the Classes members' claims are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiffs and to all of the other members of one or more of the Classes.

**Common Questions of Law and Fact**

60.    There are questions of law and fact that are common to members of each class that predominate over any questions affecting only individual class members.   Those common questions of law and fact include, without limitation, the following:

> a.    Whether Defendant's marketing and advertising of reference prices and sale prices for Falsely Discounted Subscriptions on the WP's website are likely to deceive and/or were misleading to reasonable consumers;
>
> b.    Whether Defendant's marketing and advertising of reference prices and sale prices for Falsely Discounted Subscriptions on the WP's website caused Plaintiffs and the Classes to suffer economic harm;
>
> c.    For the California Class, whether Defendant violated California Business

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

& Professions Code §§ 17200, *et seq.*;

d.      For the California Class, whether Defendant violated California Business & Professions Code §§ 17500, *et seq.*;

e.      For the California Class, whether Defendant violated California Civil Code § 1770;

f.      For the Nationwide Class, whether Defendant violated D.C. Code §§ 28-3904; and

g.      Whether Plaintiffs and the Classes are entitled to damages, restitution and/or other remedies and, if so, the appropriate measure(s).

**Adequacy**

61.     Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes.  Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the members of each Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Classes.

**Superiority**

62.     Because the monetary damages suffered by individual California Class and Nationwide Class members are relatively small, the expense and burden of individual litigation make it impossible for individual members of the Classes to seek redress for the wrongful conduct described in this complaint.  If class treatment of these claims is not available, Defendant likely will continue its wrongful conduct, unjustly retain improperly-obtained revenues, and otherwise escape responsibility for its wrongdoing.

63.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.  Even if every individual Class member could afford individual litigation, the court system could not.  It would be unduly

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties and protect the rights of each Class member.  Further, it will prevent the very real harm that would be suffered by numerous putative Class members who simply will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage as their punishment for obeying the law.  Plaintiffs anticipate no difficulty in the management of this case as a class action.

64.     The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications or that would substantially impair or impede the ability of those non-party Class members to protect their interests.

65.     The prosecution of individual actions by Class members would run the risk of establishing inconsistent standards of conduct for Defendant.

**FIRST CAUSE OF ACTION**
Violations of False and Misleading Advertising Law
(California Bus. & Prof. Code §§ 17500, *et seq.*)

66.     Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

67.     California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.*, prohibits unfair, deceptive, untrue or misleading advertising, including but not limited to false statements as to worth, value and former price.

68.     California Business & Professions Code § 17500 makes it unlawful for any person "with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, . . . to make or disseminate or cause to be made or disseminated before the public in this state,  or to make or disseminate or cause to be made or disseminated from this

state before the public in any state, in any newspaper or other publication, or any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." [Emphasis added.]

69.    The "intent" required by § 17500 is the intent to dispose of property, not the intent to mislead the public in the disposition of such property.

***70.    California Business & Professions Code § 17501 further provides that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement."***

71.    WP has violated and continues to violate Business & Professions Code § 17500 by disseminating untrue and misleading advertisements over the internet to Plaintiffs and California Class members. WP has done so, and continues to do so, by advertising false and misleading sale prices and strikethrough reference prices with respect to Falsely Discounted Subscriptions that Defendant offers and has offered for sale on its website.

72.    WP has violated, and continues to violate, Business & Professions Code § 17501 by its practice of advertising prices purportedly discounted from false strikethrough reference prices when, in reality, those strikethrough reference prices were not prevailing market prices for the Falsely Discounted Subscriptions for the three months prior to the advertising and were materially higher than the then-prevailing true market prices.  That misleading and unlawful marketing practice gave Plaintiffs and the California Class members the false impression that the Falsely Discounted Subscriptions that they purchased on WP's website were regularly sold for substantially higher prices than the advertised "sale" price that they paid – whether as a purported general sale or introductory offer – leading to the reasonable but false impression or belief that the Falsely Discounted Subscriptions had value equal to the false strikethrough reference price.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   In reality, ***Defendant regularly sold the Falsely Discounted Subscriptions on its website at the***
2   ***sale prices, not at the strikethrough reference prices, for more than three months.***

3   73.     WP has engaged, and continues to engage, in the deceptive advertising practice
4   alleged above with the intent to induce the public to purchase Falsely Discounted Subscriptions
5   on its website based on a false premise.  WP's deceptive advertising practice is designed to
6   obscure the reality that the strikethrough reference prices are not the prices at which WP
7   customarily has sold or sells digital subscriptions and to induce an erroneous belief that the
8   consumer is obtaining a good deal or saving money through a reduction of WP's regular price for
9   that subscription.

10   74.     WP knew, or through the exercise of reasonable care should have known, that the
11   advertised strikethrough prices and purported discounts and savings were untrue or misleading.

12   75.     As alleged above, Defendant's marketing and advertising of misleading
13   strikethrough reference prices, sale prices and savings displayed on the WP's website misled
14   Plaintiffs and the California Class members into purchasing Falsely Discounted Subscriptions.

15   76.     Further, Defendant's use of the deceptive pricing scheme on its website, as alleged
16   above, has deceived and is likely to continue to deceive the consuming public in violation of
17   California Business & Professions Code §§ 17500, *et seq*.  A reasonable consumer would be
18   lured into purchasing a product that is offered at a "sale" price that ***appears to be*** discounted from
19   the seller's regular, higher price for that product.  That is why the law is needed in the first place.
20   Thus, if the consumer was not willing to pay the same amount for the product without its being
21   listed as a sale price or as discounted from the seller's usual price, then the consumer must have
22   been deceived or misled into believing that this was an opportunity to obtain the product at a
23   savings. Moreover, because a "sale" by nature means a temporary lowering of prices, a customer
24   purchasing during what falsely is represented to be a sale necessarily must have been deceived.

25   77.     Plaintiffs and the California Class reasonably relied on WP's representations
26   and/or omissions made in connection with the advertised sales prices and strikethrough prices.
27   They were induced to purchase the Falsely Discounted Subscriptions based on the belief that they
28   were receiving a discount on digital newspaper subscriptions valued at more than what they

COMPLAINT                                      23                                      CASE NO.

1 actually paid.

2      78.    Plaintiffs and the California Class have suffered injury in fact and have lost money

3 as a result of Defendant's false representations. Indeed, Plaintiffs and the California Class

4 purchased the Falsely Discounted Subscriptions *because of* Defendant's misrepresentations.

5 Plaintiffs, like members of the California Class, would not have purchased and/or would not have

6 paid as much for the Falsely Discounted Subscriptions if they had known that Defendant's

7 advertising and representations described above were false and misleading.

8      79.    Plaintiffs' success in this action will enforce important rights affecting the public

9 interest and, in that regard, Plaintiffs sue on behalf of the proposed California Class as well as on

10 behalf of themselves and the general public.

11      80.    As a direct and proximate result of WP's untrue and misleading advertising

12 practices, WP improperly acquired money from Plaintiffs and the California Class members.

13 Plaintiffs seek restoration of that money for themselves and the California Class members.

14      81.    Plaintiffs take upon themselves enforcement of these laws and lawful claims.

15 There is a financial burden incurred in pursuing this action and it would be against the interests of

16 justice to penalize Plaintiffs by forcing them to pay attorneys' fees from the recovery in this

17 action. Therefore, an award of attorneys' fees is appropriate under California Code of Civil

18 Procedure § 1021.5.

19                           **SECOND CAUSE OF ACTION**
Violations of Unfair Competition Law ("UCL")

20 (California Bus. & Prof. Code §§ 17200, *et seq.*)

21      82.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and

22 further allege as follows.

23      83.    California Business & Professions Code §§ 17200, *et seq.*, prohibit unfair

24 competition in the form of any unlawful, unfair or fraudulent business act or practice. An act can

25 violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent.

26      84.    Under the UCL, an act or business practice is "unlawful" when it violates any

27 California or federal statute or regulation.

28      85.    An act is "unfair" under the UCL if it violates established public policy or if it is

immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.

86.     For an act or practice to be fraudulent under the UCL, it must be shown that members of the public are likely to be deceived.  Fraudulent conduct under the UCL does not require allegations of actual deception, reasonable reliance and damage, which are required for common law fraud.  An advertisement or promotional practice is likely to deceive if it includes assertions that are (1) untrue, or (2) true, but either are actually misleading or have the capacity, likelihood or tendency to deceive or confuse the public.  By focusing on whether "members of the public" are likely to be deceived, the unfair competition law views the challenged ad or promotional practice through the eyes of the "reasonable consumer" — that is, the "ordinary consumer acting reasonably under the circumstances."

87.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered an injury in fact and have lost money as a result of Defendant's actions as described in this Complaint.  In particular, Plaintiffs purchased Falsely Discounted Subscriptions from Defendant WP's website that were advertised as being on sale at a price that was represented to be a discount from the strikethrough reference price.  In doing so, Plaintiffs relied on Defendant's misrepresentations and omissions of material facts regarding the pricing of Falsely Discounted Subscriptions as described in this Complaint.  Had Defendant disclosed to Plaintiffs that the sale prices for the Falsely Discounted Subscriptions were not in fact discounted from WP's regular prices and, contrary to Defendant's representations, did not provide any savings, Plaintiffs would not have purchased the Falsely Discounted Subscriptions or would not have paid as much as they did for the Falsely Discounted Subscriptions.

88.     Defendant's practice of using false reference prices when marketing, advertising and selling Falsely Discounted Subscriptions to misrepresent that the subscriptions were and are being sold at discounted prices, have a particular value, quality or worth and provide a savings from the regular price is unlawful. It violates, among other statutes and regulations, the California False Advertising Law (California Business & Professions Code §§ 17500, *et seq.*), the California Consumers Legal Remedies Act (specifically, California Civil Code §§ 1770(a)(5), 1770(a)(9)

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1770(a)(13), 1770(a)(16)), and 16 C.F.R. 233.1(a).

89.     Defendant's business practice of marketing, advertising and selling Falsely Discounted Subscriptions based on false and misleading reference prices, sale prices and savings as described above – *i.e.*, that the product is on sale at a price that is discounted from the usual selling price and can be obtained at a savings – entices consumers unethically, unscrupulously and based on false premises to make purchases that they otherwise would not have made.

90.     Defendant's marketing, advertising and selling of Falsely Discounted Subscriptions based on false and misleading reference prices, sale prices and savings as described above also is a fraudulent business practice as it is likely to deceive reasonable consumers.  A reasonable consumer would be lured into purchasing a product that is offered at a "sale" price that appears to be discounted from the seller's regular, higher price for that product.  Thus, if the consumer was not willing to pay the same amount for the product without its price being listed as a sale price or as discounted from the seller's usual price, then that consumer must have been deceived or misled into believing that this was an opportunity to obtain the product at a savings.

91.     Defendant is aware that the claims and representations it makes about its sale prices, strikethrough reference prices and savings are deceptive, false, and misleading.  Defendant is aware and counts on the reality that consumers are enticed to purchase products when those products are represented as being sold at a discount from the seller's usual, higher prices or are marketed as "deals" or as being on sale.

92.     The violations of those laws and the acts and practices described in this Complaint constitute unlawful, unfair, deceptive and fraudulent business acts and practices and unfair competition within the meaning of California Business & Professions Code §§ 17200, *et seq.*

93.     As a direct and proximate result of those acts and practices, Defendant has received and continues to hold as ill-gotten gains money and property belonging to Plaintiffs and the California Class, in that Defendant has profited in those amounts from its unlawful, unfair, deceptive and fraudulent business acts and practices.

94.     California Business & Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means

of unfair, deceptive and fraudulent business acts and practices and may order restitution by Defendant to Plaintiffs for the practices alleged in this Complaint. Under California Business & Professions Code §§ 17203 and 17208, Plaintiffs and California Class members are entitled to restitution and restoration of all ill-gotten money and property belonging to Plaintiffs and the California Class.

95.    Plaintiffs' success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiffs sue on behalf of the proposed California Class as well as on behalf of themselves and the general public.

96.    Plaintiffs take upon themselves the enforcement of these laws and lawful claims. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiffs by forcing them to pay attorneys' fees from the recovery in this action. Therefore, an award of attorneys' fees is appropriate under California Code of Civil Procedure § 1021.5.

### THIRD CAUSE OF ACTION
Violations of Consumers Legal Remedies Act
(*California Civil Code §§ 1750, et seq.*)

97.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

98.    Plaintiffs bring this claim individually and on behalf of the California Class.

99.    At all relevant times, each Plaintiff was and is a "consumer" as defined in California Civil Code § 1761(d).

100.    At all relevant times, Defendant was and is a "person" as defined in California Civil Code § 1761(c).

101.    At all relevant times, Defendant's Falsely Discounted Subscriptions were and are within the meaning of "goods" as defined in California Civil Code § 1761(a).

102.    At all relevant times, the purchases of Defendant's Falsely Discounted Subscriptions by Plaintiffs and California Class members have constituted and continue to constitute "transactions" as defined in California Civil Code § 1761(e).

103.    California Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."  Defendant has violated, and continues to violate, California Civil Code § 1770(a)(5) by representing that the Falsely Discounted Subscriptions on its website have characteristics or benefits that they do not have.  Specifically, by advertising inflated strikethrough prices for Falsely Discounted Subscriptions sold on its website, WP represents that the value of its Falsely Discounted Subscriptions is greater than it actually is.

104.    California Civil Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  Defendant has violated and continues to violate California Civil Code § 1770(a)(9) by its actions in advertising Falsely Discounted Subscriptions as being on sale or discounted from a higher reference price when Defendant intends to sell and does in fact sell them at prices that are not discounted but, in reality, are WP's regular prices.

105.    ***California Civil Code § 1770(a)(13) prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions."*** Defendant has violated, and continues to violate, California Civil Code § 1770(a)(13) by its actions in deceiving consumers into thinking that they are paying a discounted sale price to purchase products valued at the purported reference price.  Specifically, Defendant has violated California Civil Code § 1770(a)(13) by engaging in the following unlawful acts and practices:

        a.    Misrepresenting the regular prices of its Falsely Discounted Subscriptions on the WP's website by advertising misleading strikethrough prices; and

        b.    Advertising discounts and savings that are inflated or nonexistent because they are based on misleading strikethrough reference prices.

106.    California Civil Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Specifically, on its website, Defendant has represented and continues to represent that it sells Falsely Discounted Subscriptions at specified prices that are discounted from strikethrough reference prices.  In fact, however, WP does not sell, nor does it intend to sell, the Falsely

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Discounted Subscriptions at an actual discount from its regular selling price because the advertised "sale" prices *are* WP's regular selling prices and the purported "savings" are fictitious. By making those misrepresentations, Defendant has violated and continues to violate California Civil Code § 1770(a)(16).

107.    Defendant's misrepresentations and omissions were and are uniform as to the marketing, advertising and selling of all Falsely Discounted Subscriptions and were and are made with the intent to deceive Plaintiffs and the California Class and to deprive the Class members of their legal rights and money.  Plaintiffs and the members of the California Class acted reasonably when they purchased Falsely Discounted Subscriptions from Defendant while trusting and believing that Defendant's representations were true and lawful.

108.    Under California Civil Code § 1780(a), Plaintiffs and the California Class seek injunctive and equitable relief for Defendant's violations of the California Consumers Legal Remedies Act.

109.    On October 5, 2023, Plaintiff sent Defendant a California Civil Code § 1782(a) notice advising Defendant of its violations of California Civil Code § 1770.  If Defendant fails to take corrective action within 30 days of its receipt of the demand letter, Plaintiff will amend the complaint to include a request for damages as permitted by California Civil Code § 1782(d).

110.    Attached to this Complaint as **Exhibits 1 and 2** are the declarations of venue required by California Civil Code § 1780(d).

**FOURTH CAUSE OF ACTION**
Violations of the D.C. Consumer Protection Procedures Act ("CPPA"),
(D.C. Code §§ 28-3901, *et seq.*)

111.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

112.    Defendant is a "person" within the meaning of D.C. Code § 28-3901(a)(1), is a merchant under § 28-3901(a)(3), and provides "goods and services" within the meaning of § 28-3901(a)(7).

113.    Each of the Plaintiffs, within the meaning of D.C. Code §§ 28-3901(a)(1) and (a)(2) and 28-3905(k)(1) is a "person" and a "consumer" who may file an action to enforce the

1   CPPA.

2        114.    A CPPA violation occurs when a person "engage[s] in an unfair or deceptive trade

3   practice, whether or not any consumer is in fact misled, deceived, or damaged thereby …" D.C.

4   Code § 28-3904.

5        115.    Defendant's business practice of marketing, advertising and selling Falsely

6   Discounted Subscriptions based on false and misleading reference prices, sale prices and savings

7   as described above is an unfair, unlawful and deceptive trade practice that violates CPPA, D.C.

8   Code § 28-3904, and specifically the following subsections:

9             (e) misrepresent as to a material fact which has a tendency to mislead;

10             (f) fail to state a material fact if such failure tends to mislead;

11             (j) make false or misleading representations of fact concerning the reasons

12             for, existence of, or amounts of price reductions, or the price in comparison

13             to price of competitors or one's own price at a past or future time; and

14             (l) falsely state the reasons for offering or supplying goods or services at

15             sale or discount prices.

16        116.    Plaintiffs and the Nationwide Class Members purchased WP's Falsely Discounted

17   Subscriptions for their personal use.

18        117.    Plaintiffs and the Nationwide Class members therefore have been injured and have

19   suffered damages in an amount to be proven at trial, including treble damages or $1,500 per

20   violation, whichever is greater, and reasonable attorneys' fees. D.C. Code §§ 28-3905(k)(2)(A)(i)

21   and (2)(B).

22        118.    Further, Defendant's use of the unfair and deceptive pricing scheme on its website,

23   as alleged above, has deceived and is likely to continue to deceive the consuming public in

24   violation of D.C. Code § 28-3904. A reasonable consumer would be lured into purchasing a

25   product that is offered at a "sale" price that appears to be discounted from the seller's regular,

26   higher price for that product. Thus, if the consumer was not willing to pay the same amount for

27   the product without its price being listed as a sale price or as discounted from the seller's usual

28   price, then that consumer must have been deceived or misled into believing that this was an

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

opportunity to obtain the product at a savings.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, pray for the following relief:

    a.  An order certifying the California Class and the Nationwide Class, appointing Plaintiffs Joseph Hirlinger and Guy Ball as the representatives of the California Class and the Nationwide Class, and appointing counsel for Plaintiffs as lead counsel for the Classes;

    b.  Disgorgement of profits and restitution and restoration of all costs incurred, sums or property unlawfully withheld, and losses caused by the acts and practices that violated California Business & Professions Code §§ 17500, *et seq.*;

    c.  Disgorgement of profits and restitution and restoration of all costs incurred, sums or property unlawfully withheld, and/or losses caused by the acts and practices that violated California Business & Professions Code §§ 17200, *et seq.*;

    d.  Equitable monetary relief arising from the acts and practices that violated California Civil Code § 1770;

    e.  Damages as permitted by California Civil Code §§ 1780 and 1782(d);

    f.  Damages as permitted by D.C. Code § 28-3905(k)(2)(A)(i).

    g.  Payment of costs of the suit;

    h.  Payment of attorneys' fees and costs under California Code of Civil Procedure § 1021.5 and California Civil Code § 1780(e);

    i.  Payment of attorneys' fees under D.C. Code § 28-3905(k)(2)(B).

    j.  An award of pre- and post-judgment interest to the extent allowed by law; and

    k.  Such other or further relief as the Court may deem proper.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Respectfully submitted,

Dated: October 6, 2023         **KELLER GROVER LLP**

By:

_____
ERIC A. GROVER
*Counsel for Plaintiffs*

## **JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: October 6, 2023         **KELLER GROVER LLP**

By:

_____
ERIC A. GROVER
*Counsel for Plaintiffs*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## **EXHIBIT 1**

### **CLRA VENUE DECLARATION OF PLAINTIFF JOSEPH HIRLINGER**

I, Joseph Hirlinger, hereby declare and state as follows:

1. I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2. I am the Plaintiff in this action.

3. I submit this declaration as required by California Civil Code § 1780(d).

4. This action is being brought in a county where Defendant WP COMPANY LLC is doing business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed on _____ (date) in

10/6/2023

_____ (City/State/Country).

San Diego/CA/United States

DocuSigned by:

_____

Joseph Hirlinger

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

COMPLAINT

33

CASE NO.

**EXHIBIT 2**

**CLRA VENUE DECLARATION OF PLAINTIFF GUY BALL**

I, Guy Ball, hereby declare and state as follows:

1.     I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.     I am the Plaintiff in this action.

3.     I submit this declaration as required by California Civil Code § 1780(d).

4.     This action is being brought in a county where Defendant WP COMPANY LLC is doing business.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed this 5th day of October 2023 in Tustin, California.



DocuSigned by:

Guy Ball

FAG33B88B00B4EA

Guy Ball

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Eric A. Grover, Esq. (SBN 136080), Rachael Jung, Esq. (SBN 239323)<br>Keller Grover LLP, 1965 Market Street, San Francisco, California 94103<br><br>TELEPHONE NO.: (415) 543-1305        FAX NO. (Optional): (415) 543-7861<br>E-MAIL ADDRESS: eagrover@kellergrover.com, rjung@kellergrover.com<br>ATTORNEY FOR (Name): Plaintiffs Joseph Hilinger and Guy Ball | *FOR COURT USE ONLY* |

ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br><br>**10/06/2023**<br>**Clerk of the Court**<br>BY: KALENE APOLONIO<br>Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Hirlinger, et al. v. WP Company LLC

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: **CGC-23-609585** |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000)   [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [x] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): 4
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: October 6, 2023

Eric A. Grover, Esq.
_____
(TYPE OR PRINT NAME)

►
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev.September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WP COMPANY LLC.; and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOSEPH HIRLINGER and GUY BALL, individually and on behalf of classes of similarly situated individuals,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*   San Francisco Superior Court

Civic Center Courthouse
400 McAllister Street, San Francisco, California 94102

**CASE NUMBER:**
*(Número del Caso):*
**CGC-23-609585**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Eric A. Grover, Esq. KELLER GROVER LLP, 1965 Market Street, San Francisco, CA 94103 (415) 543-1305

DATE: **10/09/2023**     Clerk, by _____ **KALENE APOLONIO** , Deputy
*(Fecha)*                      *(Secretario)*                                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☑ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*