UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH HIRLINGER, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>WP COMPANY LLC,<br><br>   Defendant. | Case No. 23-cv-05963-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

This case concerns allegations of false advertising. Before the Court is Defendant WP Company LLC's motion to transfer venue or, in the alternative, to dismiss the Complaint. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for June 27, 2024. *See* Civil L.R. 7-6. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS** the motion to dismiss and does not reach the motion to transfer for the following reasons.

**I. BACKGROUND[1]**

Plaintiffs Joseph Hirlinger and Guy Ball are residents of California. Compl. ¶¶ 18-19. Defendant WP Company LLC ("TWP") is a Delaware corporation with its headquarters in Washington, D.C. Compl. ¶ 20. TWP sells digital subscriptions to the newspaper it publishes, *The Washington Post*. *See* Compl. ¶ 28. TWP advertises its subscriptions with strikethrough prices (e.g., "$120") alongside substantially lower prices. Compl. ¶ 4. For example, when

---

[1] The Court accepts Plaintiffs' allegations in the complaint as true and construes the pleadings in the light most favorable to Plaintiffs. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

1    Hirlinger purchased an annual All-Access Digital Subscription at the price of $40 for one year,
2    adjacent to the $40 price, the advertisement displayed a higher price in strikethrough typeface:
3    ($100).  Compl. ¶ 11.  Similarly, when Ball purchased an annual All-Access Digital Subscription
4    at the price of $40 for one year, the advertisement displayed a higher price in strikethrough
5    typeface: ($120).  Compl. ¶ 12.  WP never or almost never actually advertised any of its digital
6    subscriptions at the strikethrough price shown in the advertisement, which improperly induced
7    them to purchase subscriptions that they otherwise would not have and to pay more for those
8    subscriptions than they otherwise would have.  Compl. ¶¶ 13-14.
9            TWP includes language explaining its introductory discount on the Checkout Page – e.g.,
10   "$40 for one year, then $120 every year thereafter."  *See* Compl. ¶ 47.  Plaintiffs reproduce the
11   following screenshot in their Complaint:



21   Compl. ¶ 47.  As discussed below, this image represents only a portion of the full webpage, which
22   reads further,

23           By subscribing, you agree to the above terms, the Terms of Service,
             Digital Products Terms of Sale & Privacy Policy. **You agree to be
24           charged $40 for one year, then $120 every year thereafter.** Sales
             tax may apply. **Your subscription will renew automatically until
25           you cancel.** You can cancel by selecting "Cancel Subscription" under
             "Subscription & Billing" in your account. To avoid future charges,
26           you must cancel before your next renewal date. No refunds for partial
             periods unless required by law.
27

28   *See* Iyer Decl. ¶ 7 & Ex. 2 (emphasis in original).  Linked within that paragraph is TWP's "Terms

2

United States District Court
Northern District of California

1  of Sale for Digital Products" ("Terms of Sale"), which states in part, "For example, you authorize
2  us to charge your Payment Method the promotional rate disclosed on the subscription screen for
3  the agreed upon promotional Billing Periods (if applicable) and the regular subscription rate in
4  subsequent Billing Periods, each with applicable taxes." Iyer Decl. Ex. 1, at § 3(b).  Section 4 also
5  provides, "If your subscription includes a promotional rate, you will be charged the promotional
6  rate for the agreed upon number of Billing Periods and upon completion of those Billing Periods,
7  your subscription will continue to automatically renew at the regular rate." *Id.* § 4.

8        Plaintiffs filed this putative class action in the California Superior Court for the County of
9  San Francisco on October 6, 2023, on behalf of themselves and others similarly situated.  Compl.
10 ¶¶ 17, 52-65.  Defendant removed the case to this Court on November 17, 2023.  ECF 1.
11 Plaintiffs' Complaint enumerates the following causes of action: Violations of False and
12 Misleading Advertising Law ("FAL") (California Bus. & Prof. Code §§ 17500, et seq.);
13 (2) violations of Unfair Competition Law ("UCL") (California Bus. & Prof. Code §§ 17200, et
14 seq.); (3) violations of Consumers Legal Remedies Act ("CLRA") (California Civil Code §§ 1750,
15 et seq.); and (4) violations of the District of Columbia Consumer Protection Procedures Act
16 ("CPPA"), (D.C. Code §§ 28-3901, et seq.).  TWP filed the instant motion to transfer, or in the
17 alternative, to dismiss, on December 22, 2023, and simultaneously filed a request for judicial
18 notice.  ECF 12; ECF 12-4.

19 **II.  DISCUSSION**

20       The Court takes up TWP's contested request for judicial notice before turning to the merits
21 of its motion to dismiss.

22       **A.  Request for Judicial Notice**

23       Defendant WP Company, LLC ("TWP") requests that the Court take judicial notice of the
24 following: (1) a publicly available webpage on TWP's website pursuant to Rule 201 of the Federal
25 Rules of Evidence: TWP's Terms of Sale for Digital Products ("Terms of Sale") at
26 https://www.washingtonpost.com/information/2022/06/17/terms-sale-digital-products/ (Iyer Decl.,
27 Ex. 1); and (2) a copy of the webpage presented to a consumer purchasing an annual digital
28 subscription from TWP (the "Checkout Page") (Iyer Decl., Ex. 2).  *See* ECF 12-4.  Plaintiffs

United States District Court
Northern District of California

1    oppose TWP's request.

2      "Generally, district courts may not consider material outside the pleadings when assessing
3    the sufficiency of a complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir.
4    2018). There are two exceptions. First, under Federal Rule of Evidence 201, a court may take
5    judicial notice of a fact "not subject to reasonable dispute because it . . . can be accurately and
6    readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.
7    201(b)(2). A court may take notice of "undisputed matters of public record," but not of "disputed
8    facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).
9    Second, the doctrine of incorporation by reference permits a court to treat an extrinsic document as
10   if it were part of the complaint if the pleading "refers extensively to the document" or if "the
11   document forms the basis" of a claim. *Khoja*, 899 F.3d at 1002; *see also Knievel v. ESPN*, 393
12   F.3d 1068, 1076 (9th Cir. 2005). This is to prevent plaintiffs from cherry-picking certain portions
13   of documents that support their claims, while omitting portions that weaken their claims. *Khoja*,
14   899 F.3d at 1002.

15     "In general, websites and their contents may be judicially noticed." *Threshold Enters. Ltd.
16   v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (collecting cases). Likewise,
17   "[c]ourts routinely take judicial notice of terms of service." *Zhang v. Twitter Inc.*, No. 23-CV-
18   00980-JSC, 2023 WL 5493823, at *3 (N.D. Cal. Aug. 23, 2023), appeal pending sub nom.
19   *Taiming Zhang v. Twitter, Inc.*, No. 23-16125 (9th Cir. Aug. 24, 2023); *see also Yuksel v. Twitter,
20   Inc.*, No. 22-CV-05415-TSH, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (taking judicial
21   notice of Twitter's Terms of Service); *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D.
22   Cal. 2018) (taking judicial notice of Google's Terms of Service), aff'd, 816 F. App'x 68 (9th Cir.
23   2020); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *7 (N.D. Cal. Sept.
24   23, 2016) (same).

25     Here, the Terms of Sale and Checkout Page are judicially noticeable because they are
26   "capable of accurate and ready determination," their contents are "easily verifiable," and they can
27   be accessed by anyone who attempts to purchase to a TWP annual digital subscription. *Datel*

28

4

*Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983-84 (N.D. Cal. 2010) (judicially noticing a limited warranty and online terms of use).

Plaintiffs advance several challenges to judicial notice of these two documents, which the Court takes up in turn.  First, Plaintiffs challenge the relevance of both the Checkout Page and the Terms of Sale, arguing that the Complaint does not refer to these webpages and that the webpages do not form the basis of their claims.  This conclusory argument fails.  Plaintiffs rely on the Checkout Page in the Complaint, providing a partial screenshot of the page and alleging that the page constitutes a component of TWP's deceptive advertising.  *See* Compl. ¶¶ 46-47.  Plaintiffs describe the interactivity of the Checkout Page, including how the Terms of Service (accessible via link adjacent to the link for Terms of Sale) become accessible following the input of an email address on the page.  Compl. ¶¶ 46-50; Iyer Decl., Ex. 2 (ECF 12-3).  Plaintiffs' claims are based on TWP's representations as to the price of its digital subscriptions, which are shown in detail on the Checkout Page and described in further detail in the Terms of Sale.  Because subscribers must view the Checkout Page before making a purchase, the whole page is relevant to the Court's consideration of TWP's marketing statements.  Because the Terms of Sale are conspicuously linked on the Checkout Page, they are also relevant to the marketing statements.  And because the pages are plainly relevant to Plaintiffs' claims, this argument does not preclude judicial notice.

Second, Plaintiffs aver that taking judicial notice of the Checkout Page and Terms of Sale would permit TWP to improperly contest a disputed factual matter: "whether Defendants' deceptive-reference-pricing scheme for first-year digital subscriptions misleads reasonable consumers."  Opp. to RJN (ECF 13-1) at 5.  Judicial notice of the two webpages does not create a dispute of fact – the webpages provide additional factual context omitted from Plaintiffs' pleading, not a separate factual paradigm inconsistent with the facts as pleaded.

Third, Plaintiffs imply that the application of the documents to the purchases of Plaintiffs and other putative class members remains uncertain because the Checkout Page is undated and the Terms of Sale are from 2022.  The Complaint alleges ongoing false advertising by TWP dating back to at least January 2021 (Compl. ¶¶ 5, 16), and the full version of the Checkout Page and Terms of Sale TWP submitted reflect those pages as they exist on TWP's website today.  *See* Iyer

5

Decl. ¶ 5. Any arguable uncertainty about dates, at best, "goes to the weight of the evidence, not to whether the documents are judicially noticeable." *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 984 (N.D. Cal. 2010) (taking judicial notice of Terms of Use dated September 2008 over objection that the same Terms could not have been provided to all customers during the relevant period, which began in 2005); *see also In re NVIDIA GPU Litig.*, No. C 08–04312 JW, 2009 WL 4020104, at *8 (N.D. Cal. Nov. 19, 2009) (taking judicial notice of web pages, even when defendant failed to show that the documents were the warranties that applied to all computers purchased during the class period or even whether the warranties comprised the full extent of the applicable warranties). Plaintiffs' suggestion that the materials are distinct from those that existed at other times during the putative class period is insufficient to preclude judicial notice.

   Fourth and specific to the Checkout Page, Plaintiffs charge that TWP "manipulated" Exhibit 2 to the Iyer Declaration by inputting a sample email address, "washpostuser@gmail.com." Opp. to RJN (ECF 13-1) at 7-8. Inputting a sample email address on a webpage to reveal the full text on the page does not constitute "manipulation" of an exhibit, and Plaintiff cites no authority to the contrary. Accordingly, the Court declines to find the Exhibit unreliable on this basis.

   Finally, Plaintiffs argue that the Checkout Page proffered by TWP is not the "same version" as the screenshot at paragraph 47 of the Complaint – "[t]he webpage referred to in the Complaint is a complete excerpt of that page." Opp. to RJN (ECF 13-1) at 7 n.3. Beyond the oxymoron presented in the description "complete excerpt," the Court disagrees. A comparison of the image Plaintiffs include at paragraph 47 of the Complaint against TWP's complete version makes clear that Plaintiffs' screenshot is a cropped image, identical in form and substance to the top portion of the full Checkout Page. *See* Iyer Decl., Ex. 2 (ECF 12-3).

   The Court finds that the exhibits TWP submitted are appropriate for judicial notice because they are easily verifiable, publicly available websites that provide necessary context for the screenshots in Plaintiffs' Complaint, and the websites are directly relevant to Plaintiffs' claims of consumer deception. The Court therefore overrules Plaintiffs' objections and **GRANTS** TWP's

1 request for judicial notice. Because it finds the two exhibits the proper subjects of judicial notice, the Court does not reach the related issue of whether it may consider the same documents incorporated into the Complaint by reference.

### B. Motion to Dismiss

TWP moves to dismiss Plaintiffs' Complaint for failure to state a claim. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

Because Plaintiffs' claims sound in fraud, their Complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation

marks omitted).

If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

### 1.     California FAL, UCL, and CLRA

Plaintiffs allege that TWP's advertising of false "sale" prices for its digital subscriptions violates California's False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and Consumers Legal Remedies Act ("CLRA"). *See* Compl. ¶¶ 66-110. Plaintiffs acknowledge that these claims rise and fall together. *See* Opp. at 16-24; *see also* Compl. ¶ 88 (stating that Plaintiffs' claim under the UCL is based on TWP's purported violations of the FAL and CLRA). TWP argues that Plaintiffs fail to state a claim under the FAL, UCL, and CLRA because they fail to allege facts establishing that the challenged pricing representations are likely to deceive a reasonable consumer.

"Under the consumer protection laws of California[,] . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *see Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* at 938 (internal quotation marks omitted) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002)). The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the test requires a probability "that a significant portion of

8

the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also Moore*, 4 F.4th at 881.

Plaintiffs here attempt to proceed on a price comparison theory of consumer fraud, a theory under which the practice of labeling products as discounted when in fact they have never been sold at the higher price can violate California's consumer protection laws. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103-05 (9th Cir. 2013); Cal. Bus. & Prof. Code § 17501. In one form of false price comparison, courts have found that advertising a struck through price as a "former price comparison" may constitute a deceptive advertising practice, particularly where the defendant had not previously offered the product at the enumerated former price. *See, e.g.*, *Inga v. Bellacor.com, Inc.*, No. 219CV10406MWFMRW, 2020 WL 5769080, at *3 (C.D. Cal. July 17, 2020). Plaintiffs aver that TWP falsely advertised its annual subscription at $120 as a former price that was not the prevailing price because TWP advertised and sold the same subscription for $40 for several years. Compl. ¶¶ 67-76. But this misapprehends the struck through $120 as a former price. The $120 figure clearly and unambiguously refers to the future renewal price for the subscription. *See* Compl. ¶ 47. Thus the $120 price is a price that subscribers agree to pay in the future upon renewal. Although Plaintiffs allege that TWP "never or almost never" sold subscriptions at the strikethrough price (Compl. ¶ 3), TWP's disclosures make clear that TWP regularly charges the strikethrough price for subscription renewal payments. *See also* Iyer Decl., Exs. 1 & 2. Thus, Plaintiffs' former price argument fails.

Plaintiffs' allegations of deceptive pricing based on a theory of comparative value similarly fail. Courts have found that advertising a struck through price as a "comparable value comparison" may constitute a deceptive advertising practice where the defendant leads consumers to believe that the value of the product is greater than previously offered. *See, e.g.*, *Rubenstein v. The Neiman Marcus Grp. LLC*, No. CV1407155SJOJPRX, 2014 WL 12607695, at *4 (C.D. Cal. Dec. 12, 2014) (discussing higher, "compare at" prices on goods offered at lower, outlet prices). As part of the advertised subscription in this case, TWP offers an introductory discount rate, and the introductory discount is identified in the very screenshot included in Plaintiffs' Complaint – "$40 for one year, then $120 every year thereafter." *See* Compl. ¶ 47. The introductory discount

9

1   rate is further clarified in the Terms of Sale, which provide, "For example, you authorize us to
2   charge your Payment Method the promotional rate disclosed on the subscription screen for the
3   agreed upon promotional Billing Periods (if applicable) and the regular subscription rate in
4   subsequent Billing Periods, each with applicable taxes." Iyer Decl. Ex. 1, at § 3(b).  Section 4 also
5   provides, "If your subscription includes a promotional rate, you will be charged the promotional
6   rate for the agreed upon number of Billing Periods and upon completion of those Billing Periods,
7   your subscription will continue to automatically renew at the regular rate." *Id.* § 4.  Because
8   potential purchasers of a TWP subscription must interact with the screen that Plaintiffs include at
9   paragraph 47 of the Complaint, they are made aware that subscriptions begin at a lower
10  introductory rate, then renew at the full price, before they make their purchase.  *See* Compl. ¶ 47.
11  The pricing structure here is clearly articulated on the point-of-sale website and the webpages
12  linked thereto.  This sets the case apart from the comparable value comparison cases because the
13  struck through $120 is not a false reference point – it represents the regular rate for the
14  subscription charged to consumers following the first year.  *Cf.*, *Rubenstein*, 2014 WL 12607695,
15  at *4.  Plaintiffs' argument of false pricing fails on this basis as well.

16       In their Opposition brief, Plaintiffs attempt to recharacterize their claim as involving only
17  "first-year" subscriptions, for which they assert that TWP never charges the full price.  *See, e.g.*,
18  Opp. at 18 ("But the purported 'sale' prices for these subscriptions are no sale at all – they are the
19  same prices at which Defendant regularly values and sells its first-year digital subscriptions."
20  (emphasis and citation omitted)).  Contrary to their Opposition, Plaintiffs allege that they
21  purchased "All-Access Digital Subscription[s]." Compl. ¶¶ 11, 12.  The Complaint contains no
22  allegations distinguishing between "first-year" subscriptions and "renewal" subscriptions –
23  indeed, these terms do not appear anywhere in the Complaint or the materials incorporated by
24  reference.  The image included at paragraph 47 makes clear that All-Access Digital Subscriptions
25  are automatically renewing subscriptions with an introductory discount for the first year.  *See*
26  Compl. ¶ 47.  Because the purported distinction between "first-year" subscriptions and "renewal"
27  subscriptions is one of Plaintiffs' own invention and presented for the first time in the Opposition
28  brief, Plaintiffs' contention that TWP never charges the full, struck-through price for "first-year

digital subscriptions" must be disregarded. *See Rodriguez v. Kwok*, No. C 13-04976 SI, 2014 WL 889570, at *6 (N.D. Cal. Mar. 3, 2014) ("Statements made in an opposition brief cannot amend the complaint.").

The Court finds Plaintiffs failed to state a claim for false or misleading advertising under the UCL, FAL, and CLRA. Therefore, the Court GRANTS TWP's motion to dismiss and **DISMISSES** Plaintiffs' California state law claims with leave to amend.

### 2. District of Columbia CPPA

The District of Columbia Consumer Protection Procedures Act ("CPPA") prohibits "unfair or deceptive trade practice[s], whether or not any consumer is in fact misled, deceived, or damaged thereby . . . [.]" D.C. Code § 28-3904. Plaintiffs allege that TWP violates the CPPA by: (i) misrepresenting a material fact which has a tendency to mislead (D.C. Code § 28-3904(e)); (ii) failing to state a material fact where such failure tends to mislead (D.C. Code § 28-3904(f)); (iii) making false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to price of competitors or one's own price at a past or future time (D.C. Code § 28-3904(j)); and (iv) falsely stating the reasons for offering or supplying goods or services at sale or discount prices (D.C. Code § 28-3904(l)). *See* Compl. ¶¶ 111-118.

TWP argues that Plaintiffs fail to plausibly allege that TWP misrepresented its introductory discount as a former price, a false reference price, or anything other than the price subscribers agreed to pay for future renewals. Plaintiffs aver that they sufficiently allege CPPA violations for the same reasons that they sufficiently allege violations of the California consumer protection laws discussed above, including that TWP made false or misleading representations about the price of subscriptions. The Court finds that Plaintiffs fail to identify any misleading statement because TWP's advertisement clearly and unambiguously refers to the future renewal price for the subscription, not a false comparison price. *See* Compl. ¶ 47. Plaintiffs point to no additional facts or grounds to find that their allegations state a claim for CPPA violations. Therefore, for the same reasons they fail to state a claim for violation of the FAL, UCL and CLRA

violations, they also fail to state a claim of the CPPA. The Court accordingly **DISMISSES** Plaintiffs' CPPA claim with leave to amend.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** TWP's request for judicial notice and **GRANTS** TWP's motion to dismiss. Though the Court does not reach TWP's motion to transfer this case to the District of Columbia in this Order, TWP may renew the motion upon Plaintiffs' demonstrated ability to state a claim. Plaintiffs may file an amended complaint within 21 days from the date of this order. No additional parties or claims may be added without leave of court or stipulation of Defendant.

**IT IS SO ORDERED.**

Dated: June 10, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**