ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,
A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

DON BIVENS (*pro hac vice forthcoming*)
don@donbivens.com
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

*Attorneys for Plaintiffs*
Joseph Hirlinger and Guy Ball

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

JOSEPH HIRLINGER and GUY BALL, individually and on behalf of classes of similarly situated individuals,

        Plaintiffs,

v.

WP COMPANY LLC.; and DOES 1 through 100, inclusive,

        Defendants

Case No:  3:23-cv-05963-AMO

CLASS ACTION

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

Complaint Filed:  October 6, 2023

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**CLASS ACTION COMPLAINT**

Plaintiffs Joseph Hirlinger and Guy Ball ("Plaintiffs"), on behalf of themselves and classes of similarly situated individuals defined below, and based on personal knowledge where applicable, information and belief, and investigation by counsel, allege the following against Defendant WP Company LLC:

**INTRODUCTION**

1.     WP Company LLC ("Defendant" or "WP" or "The Washington Post") is a national newspaper publishing company.  WP has an online e-commerce website where it sells digital subscriptions to its newspaper, *The Washington Post*.  This is a class action lawsuit against WP arising out of WP's business practice of advertising its first-year digital newspaper subscriptions with fictitious reference pricing and corresponding phantom discounts and sale prices on its website, https://subscribe.washingtonpost.com/.

2.     The practice of false reference pricing occurs when a company fabricates a fake regular, original or former reference price and then offers the item for "sale" at a purported sale price that is deeply discounted from the fabricated reference price.  In these situations, the deeply discounted price is not, in reality, a "discount," "sale," or "promotional rate" for a limited time because it is the price at or near which the item customarily is sold.

3.     To sell more subscriptions and increase its profits, WP engages in a systematic and pervasive false-reference pricing scheme.  It does so on its website by deceptively advertising first-year digital subscriptions in a way that is designed to give the impression that the first-year subscriptions are on sale for a limited time and that they usually are sold at substantially higher prices.  In reality, WP continuously sells the first-year subscriptions on its website at or near the falsely claimed "sale" price and never or almost never sells them at the purported regular and customary price shown in the ad.  The first-year digital subscriptions that WP advertised and continues to advertise on its website as discounted from false reference prices

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

are referred to in this amended complaint as the "Falsely Discounted First-Year Subscriptions."[1]

4.     WP's deceptive pricing scheme misled reasonable consumers, including Plaintiffs, into believing that the value of the Falsely Discounted First-Year Subscriptions was substantially higher than their fair market value.  Specifically, WP implemented the deceptive pricing scheme on its website by displaying false reference prices for first-year digital subscriptions as strikethrough prices (*e.g.*, "$120") alongside substantially lower purported "sale" prices, thereby giving the false impression that the lower prices were discounted or on sale from the strikethrough reference prices for first-year digital subscriptions.  WP's website also describes these "sale" prices as the "Best. Deal. Ever," a "special offer," and "[f]or a limited time" only.

5.     The strikethrough reference prices and promotional advertising language are misleading because they do not represent a "deal" or honestly state the actual prices at which WP regularly sold or sells the Falsely Discounted First-Year Subscriptions.  For an unreasonably extended time period, *i.e.*, from at least as far back as January 2021, if not earlier, WP has advertised and sold the Falsely Discounted First-Year Subscriptions at the purportedly discounted "sale" prices, not at the strikethrough reference "full" prices.

6.     Thus, the purported discounts are fictitious because they do not represent actual savings obtained by consumers for first-year digital subscriptions.  Further, any portrayal of the discounted prices as a "deal" or as a savings off the normal price or some type of special introductory offer is illusory because the prices offered were, in reality, the usual prices for WP's first-year digital subscriptions.  The unlawful and unfair false reference pricing practice and misleading promotional advertising language artificially increase demand for WP's Falsely Discounted First-Year Subscriptions and induce customers to purchase the first-year digital subscriptions based on a false impression of their value and perceived savings and a sense of urgency to subscribe now rather than later in order to receive the purported "deal."

---

[1] The term "Falsely Discounted First-Year Subscriptions" encompasses several types of first-year digital subscriptions offered by WP during the liability period.  WP offers "All-Access Digital" and "Premium Digital" subscriptions on a monthly or an annual basis.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

7.    There was nothing in WP's pricing, advertising, marketing or other materials that would indicate to a reasonable consumer that the reference prices were anything other than a legitimate discount off the regular and customary prices at which WP sold and sells the Falsely Discounted First-Year Subscriptions on its website.  Thus, a reasonable consumer would believe that the "sale" or promotional prices that WP displayed for its first-year digital subscriptions were a discount and savings from WP's usual selling prices for the offered first-year subscriptions.

8.    By engaging in its illicit pricing scheme, WP has violated California, the District of Columbia, and federal consumer protection laws.  For example, California's Consumers Legal Remedies Act ("CLRA") prohibits making "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions."[2]

9.    The District of Columbia's Consumer Protection Procedures Act ("CPPA") prohibits trade practices that "make false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to the price of competitors or one's own price at a past or future time" or that "falsely state the reasons for offering or supplying goods or services at sale or discount prices."[3]

10.    Further, the Federal Trade Commission's ("FTC") Guide Against Deceptive Pricing states:

> Where … the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.[4]

11.    WP willfully violated these laws.  In June 2021, for example, Plaintiff Hirlinger purchased an annual All-Access Digital Subscription on WP's website.  Plaintiff Hirlinger's

---

[2] Cal. Civ. Code § 1770(a)(13).

[3] D.C. Code §§ 28-3904(j) and (l); *see also*, §§ 28-3904(e) and (f).

[4] 16 C.F.R. 233.1(a).

first-year subscription purchase was in response to a WP advertisement for a "deal" on an annual All-Access Digital Subscription at the discounted price of $40 for one year. Right next to the $40 sale price, the advertisement displayed a higher reference price in strikethrough typeface: "(~~$100~~)." Defendant's use of the strikethrough price clearly was intended to convey to a reasonable consumer the prospect of a $60 savings from WP's regular annual All-Access Digital Subscription price for first-year subscriptions. When he made his purchase, Plaintiff Hirlinger believed that he was buying a discounted annual All-Access Digital Subscription that was valued at and regularly sold for $100.

12.    In February 2023, Plaintiff Ball purchased an annual All-Access Digital Subscription on WP's website. Plaintiff Ball's first-year subscription purchase was in response to a WP advertisement for a "deal" on an annual All-Access Digital Subscription at the discounted price of $40 for one year. Right next to the $40 sale price, the advertisement displayed a higher reference price in strikethrough typeface: ("~~$120~~). Defendant's use of the strikethrough price clearly was intended to and would convey to a reasonable consumer the possibility of an $80 savings from WP's purported regular annual All-Access Digital Subscription price for first-year subscriptions that was available for a limited time only.

13.    But discovery will show that, in the weeks and months before and after Plaintiffs' purchases, WP never or almost never actually advertised or sold any of its first-year digital subscriptions at the strikethrough price shown in the advertisement. Pricing data compiled by Plaintiffs' counsel demonstrates as much:

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**November 25, 2021**

The Washington Post



## Best. Deal. Ever.

For a limited time, get a whole year of The Washington Post
for just ~~$10~~ 99¢ every four weeks.
You can cancel anytime.

| *Special offer* Monthly plans | Yearly plans |

### All-Access Digital

~~$100~~ $9.99 for one year

✓ **Unlimited access** on the web and in our apps
✓ **24/7** live news updates
✓ Most comprehensive **political and international coverage**
✓ Groundbreaking **interactive stories**

### Premium Digital

~~$150~~ $9.99 for one year

✓ Every **All-Access Digital** feature

PLUS

✓ A **bonus subscription** to share
✓ Monthly **30-day digital passes** to share
✓ **Exclusive eBooks** written by our journalists

---

**November 25, 2021**

The Washington Post



BLACK FRIDAY | ENDS SOON

## Best. Deal. Ever.

For a limited time, get a whole year of The Washington Post
for just ~~$10~~ 99¢ every four weeks.
You can cancel anytime.

| *Special offer* Monthly plans | Yearly plans |

### All-Access Digital

~~$10~~ 99¢ every four weeks

✓ **Unlimited access** on the web and in our apps
✓ **24/7** live news updates
✓ Most comprehensive **political and international coverage**
✓ Groundbreaking **interactive stories**

### Premium Digital

~~$15~~ 99¢ every four weeks

✓ Every **All-Access Digital** feature

PLUS

✓ A **bonus subscription** to share
✓ Monthly **30-day digital passes** to share
✓ **Exclusive eBooks** written by our journalists

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**December 19, 2021**



The Washington Post

# Choose your plan.

You can **cancel anytime.**

Monthly plans    *Best value*
Yearly plans

### All-Access Digital

Subscribe for $100 **$40 for one year**

✓ **Unlimited access** on the web and in our apps
✓ **24/7** live news updates
✓ Most comprehensive **political and international coverage**
✓ Groundbreaking **interactive stories**

### Premium Digital

Subscribe for $150 **$60 for one year**

✓ Every **All-Access Digital** feature

PLUS

✓ A **bonus subscription** to share
✓ Monthly **30-day digital passes** to share
✓ **Exclusive eBooks** written by our journalists

**December 19, 2021**



The Washington Post

# Choose your plan.

You can **cancel anytime.**

Monthly plans    *Best value*
Yearly plans

### All-Access Digital

Subscribe for $10 **$4 every four weeks**

✓ **Unlimited access** on the web and in our apps
✓ **24/7** live news updates
✓ Most comprehensive **political and international coverage**
✓ Groundbreaking **interactive stories**

### Premium Digital

Subscribe for $15 **$6 every four weeks**

✓ Every **All-Access Digital** feature

PLUS

✓ A **bonus subscription** to share
✓ Monthly **30-day digital passes** to share
✓ **Exclusive eBooks** written by our journalists

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**February 15, 2022**



**February 15, 2022**

14.   By using misleading promotional language and false strikethrough prices to increase the perceived value of and deal for the Falsely Discounted First-Year Subscriptions that it sells, WP harms its customers by inducing them to purchase first-year subscriptions that they otherwise would not have bought.

15.   WP's deceptive strikethrough prices and misleading advertising practices also

harm competition by giving WP an unfair advantage over other news publishing companies that do not engage in false reference pricing when they sell first-year digital subscriptions or subscriptions generally.  Consumers are more likely to purchase a $40 subscription advertised as being sold at 60% or more off of its the regular price than they are to pay the same $40 for an honestly represented full price subscription.  WP practices that deception because it works, *i.e.*, because it succeeds in misleading consumers.

16.    WP advertises the misleading strikethrough prices and sale prices for its Falsely Discounted First-Year Subscriptions on its website ***every day*** – a consistency that puts the lie to any assertion that the prices are bona fide "sale" or "promotional" prices.  The pervasive and ongoing nature of WP's deceptive false-reference-pricing scheme demonstrates that the scheme is central to WP's overall marketing strategy for selling first-year subscriptions.

17.    In bringing this lawsuit, Plaintiffs intend to curb these and other unlawful and deceptive advertising practices on WP's website.  Plaintiffs seek compensation for themselves and all others similarly situated who have been misled by WP's false and misleading advertising.

## **PARTIES**

18.    Plaintiff Joseph Hirlinger is an individual and a resident of California.

19.    Plaintiff Guy Ball is an individual and a resident of California.

20.    Defendant WP Company LLC, headquartered in Washington D.C., is a Delaware limited liability company that systematically and continuously does business throughout the United States, including in California and with California residents, and including those in San Francisco County.  From its headquarters in the District of Columbia, WP Company LLC publishes *The Washington Post* newspaper and markets, advertises and sells subscriptions to online and print editions of *The Washington Post* to consumers in California and throughout the United States.

21.    Plaintiffs are ignorant of the true names and capacities of defendants sued as DOES 1 through 100, inclusive, and therefore sue those defendants by those fictitious names. Plaintiffs will amend this complaint to allege those defendants' true names and capacities when they are ascertained.  Plaintiffs are informed and believe and, on that ground, allege that each of

the fictitiously-named defendants is responsible in some manner for the occurrences alleged and that Plaintiffs' injuries and damages, as alleged, are proximately caused by those occurrences.

22.     Plaintiffs are informed and believe and on that ground allege that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants as to be liable for their conduct with respect to the matters alleged below.  Plaintiffs are informed and believe and, on that ground, allege that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that each knew or should have known about and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all Defendants.

## **JURISDICTION AND VENUE**

23.     This Court has subject matter jurisdiction over this action under California Business & Professions Code §§ 17200, *et seq.*, and 17500, *et seq.*, and under California Civil Code §§ 1770 and 1780.

24.     This Court has personal jurisdiction over the parties because Defendant continuously and systematically conducts business in the State of California.  Likewise, Plaintiffs' rights were violated in the State of California and arose out of their contact with Defendant from within California.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FACTUAL ALLEGATIONS**

A.    **Background of the E-Commerce Market for Digital Subscriptions and WP's Digital Subscriptions**

25.    The market for e-commerce subscriptions is thriving. "The global subscription e-commerce market size" was "$72.91 billion in 2021" and "is expected to reach $904.2 billion by 2026."[5]  Newspapers and magazines were early adopters, utilizing the digital subscription business model "as a tactic …to entice readers."[6]

26.    WP is a national newspaper publishing company headquartered in Washington D.C that markets, advertises and sells *The Washington Post* digital subscriptions over the internet through its online e-commerce website, https://subscribe.washingtonpost.com/.

27.    In 2013, Amazon founder Jeff Bezos purchased The Washington Post for $250 million.[7]  The same year that Bezos purchased it, WP began using the digital subscription model, distancing itself from reliance on ad revenue and targeting online subscription revenue instead.[8] Since then, WP "has been focused on signing up as many paying subscribers as possible,"[9] a

[5] Wertz, Jia, "The Growth of Subscription Commerce," *Forbes*, July 15, 2022, at https://www.forbes.com/sites/jiawertz/2022/07/15/the-growth-of-subscription-commerce/?sh=63e2acaeb572.

[6] *Id.* ("Digital subscriptions have become an increasingly popular revenue model used among publishers …").

[7] Giulinia-Hoffman, Francesca, "How the Washington Post has Changed Under Jeff Bezos," *CNN Business*, August 16, 2019, at https://www.cnn.com/2019/08/16/media/jeff-bezos-donald-graham/index.html.

[8] Veseling, Brian, "Washington Post puts Emphasis on Creating Paths to Subscriptions," *World Association of New Publishers/IFRA*, July 30, 2018, at https://wan-ifra.org/2018/07/washington-post-puts-emphasis-on-creating-paths-to-subscription/ (quoting Miki Toliver King, Vice President of Marketing at The Washington Post

[9] Stelter, Brian, "Washington Post digital subscriptions soar past 1 million mark," *CNNMoney*, Sep. 26, 2017, at https://money.cnn.com/2017/09/26/media/washington-post-digital-subscriptions/index.html; *see also*, "How The Washington Post is reorienting for digital subscriptions," *Digiday*, Nov. 29, 2018, at https://digiday.com/media/washington-post-digital-subscriptions-reorienting/ ("'Publishers focused on building a subscriber base need someone who can connect marketing, technology and audience together.' That shift has been pronounced at the [Washington] Post, where everything, including its advertising innovations, must be weighed against the publisher's pursuit of subscriber growth.") (emphasis added); "Bezos, The Digital Midas. Turning Around the Washington Post," *HBS Digital Initiative*, Feb. 1, 2018, available at
*(Cont'd)*

strategy that has proven effective.  By 2016, under Bezos' ownership, and due at least in part to the practices that are the subject of this complaint, WP transformed itself from a nationally recognized but financially struggling "print-focused publication" into a profitable, "globally recognized digital brand."[10]

28.    Even when WP experienced a dip in profitability and readership around 2021-2022, WP focused on increasing its numbers of digital subscribers as its strategy to regain its financial footing.[11]

29.    As of September 2023, WP maintains a substantial amount of traffic to its websites.  According to a third-party website-traffic monitoring site, WP's digital content website, https://www.washingtonpost.com/, receives an average of 29.7 million visits per month, and WP's subscription website, https://subscribe.washingtonpost.com/, receives an average of more than 52,715 visits per month.[12]

30.    Defendant's online success has resulted in significant part from advertising misleading strikethrough prices and illusory introductory offers for its first-year subscriptions.

**B.    WP's Pricing Scheme**

31.    By using false reference prices and misleading "sale" prices that purportedly are available for a limited time only, WP creates an illusion that consumers can get a "deal" and save money by purchasing a first-year digital newspaper subscription – either the All-Access Digital or Premium Digital subscriptions – when they first see the promotional advertisement on WP's website.  The discounted price is advertised as a "special offer" for "a limited time."

32.    WP perpetrates its pricing scheme by including in its advertising a strikethrough

_____

https://digital.hbs.edu/platform-digit/submission/bezos-the-digital-midas-turning-around-the-washington-post/#_ftnref5 (discussing WP's focus on building its paid digital subscriber base.)

[10] Giulinia-Hoffman, Francesca, "How the Washington Post has Changed Under Jeff Bezos," *CNN Business*, August 16, 2019, at https://www.cnn.com/2019/08/16/media/jeff-bezos-donald-graham/index.html.

[11] Mullin, Benjamin and Robertson, Katie, "Frustrations Mount at Washington Post as its Business Struggles," *The New York Times*, August 30, 2022, at https://www.nytimes.com/2022/08/30/business/media/washington-post-jeff-bezos-revenue.html.

[12] https://neilpatel.com/website-traffic-checker/.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

price – *i.e.*, the first-year subscription's purported full, non-discounted price – which it typically displays in strikethrough typeface (*e.g.*, "~~$100~~" or "~~$120~~").  Adjacent to the strikethrough price, WP advertises a lower price – effectively a purported "sale" or "discounted" first-year subscription price – which actually is just the price at which Defendant regularly sells its first-year digital subscriptions.   WP typically displays the strikethrough price and the lower "discounted" price for each first-year digital subscription in a bright blue "button" with contrasting white font. Below are several examples of how WP advertises fictitious savings and illusory introductory prices on its website.

**<u>November 25, 2021</u>**



KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103

Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861



33.     The pricing scheme appears on the WP's subscription website.  Consumers who view a pop-up ad or are interested in a WP first-year subscription are brought to that webpage when, for example, they click the "Subscribe" button on the general WP website or the link that results from a Google search for WP subscription, *i.e.*, https://subscribe.washingtonpost.com/. Even simply trying to access a *Washington Post* article online without a subscription leads to that website.

34.     Discovery will show that, ***for many years, WP continuously has offered*** the Falsely Discounted First-Year Subscriptions at the purported sale prices.  Discovery also will show that the strikethrough prices shown on WP's website do not represent the actual prices at which WP sells or has sold the first-year digital subscriptions on its website for at least the past three years, if not longer.

35.     Because it misleads consumers about the existence and amounts of WP's purported price reductions for its first-year subscriptions, WP's pricing scheme violates California and District of Columbia law.  Its pricing scheme is misleading because it creates the false impression that a consumer is buying or has an opportunity to buy a first-year digital newspaper subscription at a discount from its usual selling price, *i.e.*, a discount from the

advertised strikethrough price. Consumers mistakenly believe they are getting a limited time deal and are saving money by purchasing a first-year subscription sooner rather than later at the advertised discounted price. In reality, the purported "savings" advertised by WP on its subscription website do not represent any savings that Plaintiffs and reasonable consumers actually receive because the "sale" price is just WP's regular selling price for first-year subscriptions. The truth is that there is no "special offer."

### C.    The Ongoing Nature of WP's Deceptive Pricing

36.    On October 5, 2023, Plaintiffs' counsel sent WP a pre-suit demand letter that notified WP of its unlawful and deceptive marketing practices. Although WP received the letter, it continues to advertise misleading strikethrough reference prices alongside the purported discount prices on its website.

### D.    Reasonable Consumer Standard

37.    The "reasonable consumer" standard applies to California False Advertising Law ("FAL") claims, Unfair Competition Law ("UCL") claims[13] and CLRA claims[14] as well as District of Columbia CPPA claims.[15]

38.    A "reasonable consumer" is an ordinary consumer acting reasonably under the circumstances.[16] Such a consumer "need not be exceptionally 'acute and sophisticated,'" nor

---

[13] Cal. Bus. & Prof. Code §§ 17500, *et seq.*; *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950-51 (2002).

[14] Cal. Civ. Code § 1770; *Aron v. U-Haul Co. of California*, 143 Cal.App.4th 796, 806 (2006) applying reasonable consumer standard in concluding that the plaintiff adequately pleaded UCL and CLRA claims); *Carvalho v. HP, Inc.*, No. 21-cv-08015-BLF, 2022 U.S. Dist. LEXIS 229179, at *20-21 (N.D. Cal. Dec. 20, 2022) (same regarding FAL, UCL and CLRA claims based on false strikethrough pricing allegations); *see also, e.g., Inga v. Bellacor,* No. 2:19-cv-10406-MWF-MRW, 2020 U.S. Dist. LEXIS 188297, at *6 (C.D. Cal. July 17, 2020) (similar), citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

[15] D.C. Code § 28-3904; *Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D.D.C. 2010) ("'[A] claim of an unfair trade practice under the CPPA is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer.[,]'") quoting *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008) (original alterations omitted); *Lee v. Can. Goose US, Inc.*, 2021 U.S. Dist. LEXIS 121084, *14 (S.D.N.Y June 29, 2021) (same), citing *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013) and *Pearson, supra*, 961 A.2d at 1075.

[16] *Skinner v. Ken's Foods, Inc.*, 53 Cal.App.5th 938, 948 (2020), citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682 (2006).

1    must the consumer "necessarily be wary or suspicious of advertising claims."[17]

2    39.    To meet the reasonable consumer standard, "a plaintiff need only show that

3    members of the public are likely to be deceived" by the defendant's advertising.[18]    Members of

4    the public are likely to be deceived by advertising that is false and by advertising that, "although

5    true, is either actually misleading or…has a capacity, likelihood, or tendency to deceive or

6    confuse the public."[19]

7    40.    As the U.S. Supreme Court has long recognized:

8    ***"Advertisements as a whole may be completely misleading although every
sentence separately considered is literally true.*** *This may be because things are*
9    *omitted that should be said, or because advertisements are composed or*
*purposefully printed in such way as to mislead.* [Citations.] ***That exceptionally***
10   ***acute and sophisticated readers might have been able by penetrating analysis to***
***have deciphered the true nature of the contest's terms is not sufficient to bar***
11   ***findings of fraud by a factfinding tribunal. Questions of fraud may be***
***determined in the light of the effect advertisements would most probably***
12   ***produce on ordinary minds.*** [Citations.] ***People have a right to assume that***
***fraudulent advertising traps will not be laid to ensnare them. 'Laws are made to***
13   ***protect the trusting as well as the suspicious.'"***[20]

14   41.    Reasonable consumers are not expected to undertake an investigation and make a

15   one-to-one comparison of various competing products.[21]    As the Ninth Circuit has found:

16   Most consumers have, at some point, purchased merchandise that was marketed
as being "on sale" because the proffered discount seemed too good to pass up.
17   Retailers, well aware of consumers' susceptibility to a bargain, therefore have an
incentive to lie to their customers by falsely claiming that their products have
18   previously sold at a far higher 'original' price in order to induce customers to
purchase merchandise at a purportedly marked-down "sale" price. Because such
19   practices are misleading—and effective—the California legislature has prohibited
them."[22]
20

21   42.    ***A reasonable consumer is entitled to*** "expect others to behave reasonably well,"

22

23   [17] *Id.*, citing *Lavie v. Proctor & Gamble Co.*, 105 Cal.App.4th 496, 509-10 (2003).

     [18] *Colgan*, *supra*, 135 Cal.App.4th at 682.
24
     [19] *Kasky*, *supra*, 27 Cal.4th at 951; *see also*, *Williams*, *supra*, 552 F.3d at 939, quoting *Kasky*,
25   *supra*, 27 Cal.4th at 951.

26   [20] *Donaldson v. Read Magazine*, 333 U.S. 178, 188-189 (1948) (emphasis added).

27   [21] *See*, *e.g.*, *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954 DDP
     (MANx), 2014 U.S. Dist. LEXIS 117587, at *8-9 (C.D. Cal. Aug. 22, 2014).
28
     [22] *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1  and is permitted to **be unwary or trusting**."[23]    **If "a person of ordinary intelligence could**

2  **reasonably be deceived or confused, that is all that is required**."[24]

3      43.    Representations "may not be misleading in isolation, but are deceptive when

4  considering the … advertisement as a whole."[25]    Thus, a "perfectly true statement couched in

5  such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose

6  other relevant information, is actionable."[26]

7      **E.    Defendant's False Advertising Occurs Outside of WP's Terms of Service**

8      44.    To purchase a Falsely Discounted First-Year Subscription, consumers click on

9  one of the blue buttons on the WP subscription website's main landing page.    That is what

10  Plaintiffs did.    From there, consumers are transferred to a second webpage on which WP

11  instructs consumers to sign up by entering their email address, after which they are able to

12  provide their payment information.

13      45.    Before an email address is entered, the payment information and hyperlinks to

14  WP's Terms of Service are grayed out and inaccessible.    Only after an email address is entered

15  do the payment section and hyperlinks to WP's Terms of Service become accessible.

---

[23] *Lavie*, *supra*, 105 Cal.App.4th at 505-06.

[24] *Brockey v. Moore*, 107 Cal.App.4th 86, 100 (2003), citing *Hair v. McGuire*, 188 Cal.App.2d 348, 353 (1961).

[25] *Mullins v. Premier Nutrition Corp.*, 178 F.Supp.3d 867, 889 (N.D. Cal. 2016).  *See also*, *Lima v. Gateway, Inc.*, 710 F.Supp.2d 1000, 1007 (C.D. Cal. 2010) (finding that statements "cannot be considered in isolation because they contribute to the deceptive context of the advertising as a whole").

[26] *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332-333 (1998); *Aron*, *supra*, 143 Cal.App.4th at 807 (same).  *See also*, *Shaeffer v. Califia Farms, LLC*, 44 Cal.App.5th 1125, 1138 (2020) (finding that **"statements which, while literally true or ambiguous, convey a false impression or are misleading in context, as demonstrated by actual consumer confusion" are actionable**. (emphasis added)), citing *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

46.     The Terms of Service state that they apply to the person's "use" of WP's services provided by WP's website and apps.  Those terms also state that consumers who do not agree to the Terms of Service should not "access" or "use" WP's services.

47.     WP's subscription website page that advertises the misleading strikethrough reference prices and the false first-year subscription "sale" prices that purportedly are available for a limited time only has no hyperlinks to the Terms of Service.

48.     Thus, when Plaintiffs viewed the deceptive sale price information and made the decision to purchase a first-year digital subscription, they had no notice – actual, constructive or inquiry – of WP's Terms of Service.  *See* screenshots at ¶ 32.  Further, even after Plaintiffs clicked the link to purchase a first-year subscription, the hyperlink to the Terms of Service could not (and to this day still cannot) be accessed right away.  Under those circumstances, Plaintiffs were not bound by or parties to any agreement when WP's false advertising violations occurred.

49.     Even if and when considering the Terms of Service, the language referencing a "promotional rate" furthers Defendant's deception and highlights its misleading advertising practices when selling its first-year subscriptions.  By definition, a "promotional rate" is offered for a limited duration of time.  It is not a "special offer" for "a limited time" if the advertised discounted "sale" price for a first-year subscription is the same price at which Defendant customarily and regularly values and sells its first-year digital subscriptions.

50.     Moreover, even if a court were to find that the Terms of Service applied to the false advertising on the first page of WP's subscription website, the Terms of Service contain a Governing Law clause stating that the laws of the United States and the District of Columbia govern the agreement.  If a court were to find that that Governing Law clause applied, the District of Columbia's CPPA would apply to all consumers nationwide.

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.   The California Class and the Nationwide Class (the "Classes") are defined as follows:

**California Class:** All California residents who purchased a first-year digital subscription to *The Washington Post* that was advertised on The Washington Post's subscription website as discounted from a strikethrough reference price and who made that purchase on The Washington Post's website while they were located in California at any time on or after the start of the applicable limitations period preceding the filing of the Complaint in this matter.

**Nationwide Class:** All United States residents who purchased a first-year digital subscription to *The Washington Post* that was advertised on The Washington Post's subscription website as discounted from a strikethrough reference price and who made that purchase on The Washington Post's website while located in the United States at any time on or after the start of the applicable limitations period preceding the filing of the Complaint in this matter.

52.     Excluded from the Classes are employees of The Washington Post and all judges assigned to hear any aspect of this litigation, as well as their staff members and immediate family members.

53.     The Classes that Plaintiffs seek to represent contain numerous members and are ascertainable.  Plaintiffs reserve the right to amend or modify the class definitions and/or to add subclasses or limitations to particular issues.

54.     By its unlawful actions, Defendant has violated California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.* and California Civil Code § 1770.  The questions raised, therefore, are of common or general interest to the California Class members, who have a well-defined community of interest in the questions of law and fact raised in this action.

55.     By its unlawful actions, Defendant also has violated the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq.* (the "CPPA").   The

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  questions raised, therefore, are of common or general interest to the Nationwide Class members,

2  who have a well-defined community of interest in the questions of law and fact raised in this

3  action.

4      56.    Plaintiffs' claims are typical of those of the Classes, as Plaintiffs now suffer and

5  have suffered from the same violations of the law as other putative Class members.  Plaintiffs

6  have retained counsel with substantial experience in prosecuting complex litigation and class

7  actions to represent them and the Classes, and Plaintiffs will fairly and adequately represent the

8  interests of the Classes.

9  **Numerosity**

10      57.    Based on information and belief, each Class consists of at least 100 individuals,

11  making joinder of individual cases impracticable.

12  **Typicality**

13      58.    Plaintiffs' claims are typical of the claims of all of the other members of the

14  Classes.  Plaintiffs' claims and the Classes members' claims are based on the same legal theories

15  and arise from the same unlawful conduct, resulting in the same injury to Plaintiffs and to all of

16  the other members of one or more of the Classes.

17  **Common Questions of Law and Fact**

18      59.    There are questions of law and fact that are common to members of each class

19  that predominate over any questions affecting only individual class members.  Those common

20  questions of law and fact include, without limitation, the following:

21      a.    Whether Defendant's marketing and advertising of reference prices and

22      sale prices for Falsely Discounted First-Year Subscriptions on the WP's

23      website are likely to deceive and/or were misleading to reasonable

24      consumers;

25      b.    Whether Defendant's marketing and advertising of reference prices and

26      sale prices for Falsely Discounted First-Year Subscriptions on the WP's

27      website caused Plaintiffs and the Classes to suffer economic harm;

28      c.    For the California Class, whether Defendant violated California Business

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1        & Professions Code §§ 17200, *et seq.*;

2    d.        For the California Class, whether Defendant violated California Business

3        & Professions Code §§ 17500, *et seq.*;

4    e.        For the California Class, whether Defendant violated California Civil

5        Code § 1770;

6    f.        For the Nationwide Class, whether Defendant violated D.C. Code §§ 28-

7        3904; and

8    g.        Whether Plaintiffs and the Classes are entitled to damages, restitution

9        and/or other remedies and, if so, the appropriate measure(s).

10   **Adequacy**

11       60.    Plaintiffs will fairly and adequately represent and protect the interests of the other

12   members of the Classes.  Plaintiffs have retained counsel with substantial experience in

13   prosecuting complex litigation and class actions.  Plaintiffs and their counsel are committed to

14   prosecuting this action vigorously on behalf of the members of each Class and have the financial

15   resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the

16   other members of the Classes.

17   **Superiority**

18       61.    Because the monetary damages suffered by individual California Class and

19   Nationwide Class members are relatively small, the expense and burden of individual litigation

20   make it impossible for individual members of the Classes to seek redress for the wrongful

21   conduct described in this complaint.  If class treatment of these claims is not available,

22   Defendant likely will continue its wrongful conduct, unjustly retain improperly-obtained

23   revenues, and otherwise escape responsibility for its wrongdoing.

24       62.    A class action is superior to other available methods for the fair and efficient

25   adjudication of this controversy because individual litigation of the claims of all Class members

26   is impracticable and questions of law and fact common to the Classes predominate over any

27   questions affecting only individual members of the Classes.  Even if every individual Class

28   member could afford individual litigation, the court system could not.  It would be unduly

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous putative Class members who simply will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage as their punishment for obeying the law. Plaintiffs anticipate no difficulty in the management of this case as a class action.

63.     The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications or that would substantially impair or impede the ability of those non-party Class members to protect their interests.

64.     The prosecution of individual actions by Class members would run the risk of establishing inconsistent standards of conduct for Defendant.

**FIRST CAUSE OF ACTION**
Violations of False and Misleading Advertising Law
(California Bus. & Prof. Code §§ 17500, *et seq.*)

65.     Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

66.     California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.*, prohibits unfair, deceptive, untrue or misleading advertising, including but not limited to false statements as to worth, value and former price.

67.     California Business & Professions Code § 17500 makes it unlawful for any person "with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, . . . to make or disseminate or cause to be made or disseminated before the public in this state,  or to make or disseminate or cause to be made or

disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." [Emphasis added.]

68.     The "intent" required by § 17500 is the intent to dispose of property, not the intent to mislead the public in the disposition of such property.

***69.     California Business & Professions Code § 17501 further provides that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement."***

70.     WP has violated and continues to violate Business & Professions Code § 17500 by disseminating untrue and misleading advertisements over the internet to Plaintiffs and California Class members. WP has done so, and continues to do so, by advertising false and misleading sale prices and strikethrough reference prices with respect to Falsely Discounted First-Year Subscriptions that Defendant offers and has offered for sale on its website.

71.     WP has violated, and continues to violate, Business & Professions Code § 17501 by its practice of advertising prices purportedly discounted from false strikethrough reference prices when, in reality, those strikethrough reference prices were not prevailing market prices for the Falsely Discounted First-Year Subscriptions for the three months prior to the advertising and were never, or almost never, the prices at which WP regularly sold its first-year digital subscriptions.   That misleading and unlawful marketing practice gave Plaintiffs and the California Class members the false impression that the Falsely Discounted First-Year Subscriptions that they purchased on WP's website were regularly sold for substantially higher prices than the advertised "sale" price that they paid – whether as a purported general sale or as

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

an introductory offer available for a limited time – leading to the reasonable but false impression or belief that the Falsely Discounted First-Year Subscriptions had value equal to the false strikethrough reference price. In reality, ***Defendant regularly sold the Falsely Discounted First-Year Subscriptions on its website at the sale prices, not at the strikethrough reference prices, for more than three months.***

72.     WP has engaged, and continues to engage, in the deceptive advertising practice alleged above with the intent to induce the public to purchase Falsely Discounted First-Year Subscriptions on its website based on a false premise. WP's deceptive advertising practice, including its use of phrases such as "Best. Deal. Ever," "special offer," and "limited time," is designed to obscure the reality that the strikethrough reference prices are not the prices at which WP customarily has sold or sells its first-year digital subscriptions. WP's misleading advertising language induces an erroneous sense of urgency to purchase now rather than later and creates the mistaken impression that the consumer is obtaining a good deal or saving money through a purported reduction of WP's regular price for that first-year subscription.

73.     WP knew, or through the exercise of reasonable care should have known, that the advertised strikethrough prices and purported discounts and savings for its first-year digital subscriptions were untrue or misleading.

74.     As alleged above, Defendant's marketing and advertising of misleading strikethrough reference prices, sale prices and savings displayed on the WP's subscription website misled Plaintiffs and the California Class members into purchasing Falsely Discounted First-Year Subscriptions.

75.     Further, Defendant's use of the deceptive pricing scheme on its subscription website, as alleged above, has deceived and is likely to continue to deceive the consuming public in violation of California Business & Professions Code §§ 17500, *et seq*. A reasonable consumer would be lured into purchasing a product that is offered at a "sale" price that ***appears to be*** discounted from the seller's regular, higher price for that product. That is why the law is needed in the first place. Thus, if the consumer was not willing to pay the same amount for the product without its being listed as a sale price or as discounted from the seller's usual price, then the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

consumer must have been deceived or misled into believing that this was an opportunity to obtain the product at a savings. Moreover, because a "sale" or "promotion" by nature means a temporary lowering of prices, a customer purchasing during what falsely is represented to be a sale necessarily must have been deceived.

76. Plaintiffs and the California Class reasonably relied on WP's representations and/or omissions made in connection with the advertised sales prices and strikethrough prices for WP's first-year digital subscriptions. They were induced to purchase the Falsely Discounted First-Year Subscriptions based on the belief that they were receiving a limited time only discount on a first-year digital newspaper subscription valued at more than what they actually paid.

77. Plaintiffs and the California Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Indeed, Plaintiffs and the California Class purchased the Falsely Discounted First-Year Subscriptions *because of* Defendant's misrepresentations. Plaintiffs, like members of the California Class, would not have purchased and/or would not have paid as much for the Falsely Discounted First-Year Subscriptions if they had known that Defendant's advertising and representations described above were false and misleading.

78. Plaintiffs' success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiffs sue on behalf of the proposed California Class as well as on behalf of themselves and the general public.

79. As a direct and proximate result of WP's untrue and misleading advertising practices regarding its first-year subscriptions, WP improperly acquired money from Plaintiffs and the California Class members. Plaintiffs seek restoration of that money for themselves and the California Class members.

80. Plaintiffs take upon themselves enforcement of these laws and lawful claims. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiffs by forcing them to pay attorneys' fees from the recovery in this action. Therefore, an award of attorneys' fees is appropriate under California Code of Civil Procedure § 1021.5.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## SECOND CAUSE OF ACTION
### Violations of Unfair Competition Law ("UCL")
(California Bus. & Prof. Code §§ 17200, *et seq.*)

81.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

82.    California Business & Professions Code §§ 17200, *et seq.*, prohibit unfair competition in the form of any unlawful, unfair or fraudulent business act or practice. An act can violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent.

83.    Under the UCL, an act or business practice is "unlawful" when it violates any California or federal statute or regulation.

84.    An act is "unfair" under the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.

85.    For an act or practice to be fraudulent under the UCL, it must be shown that members of the public are likely to be deceived. Fraudulent conduct under the UCL does not require allegations of actual deception, reasonable reliance and damage, which are required for common law fraud. An advertisement or promotional practice is likely to deceive if it includes assertions that are (1) untrue, or (2) true, but either are actually misleading or have the capacity, likelihood or tendency to deceive or confuse the public. By focusing on whether "members of the public" are likely to be deceived, the unfair competition law views the challenged ad or promotional practice through the eyes of the "reasonable consumer" — that is, the "ordinary consumer acting reasonably under the circumstances."

86.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered an injury in fact and have lost money as a result of Defendant's actions as described in this Complaint. In particular, Plaintiffs purchased Falsely Discounted First-Year Subscriptions from Defendant WP's website that were advertised as being on sale for a limited time at a price that was represented to be a discount from the strikethrough reference price. In doing so, Plaintiffs relied on Defendant's misrepresentations and omissions of material facts regarding the pricing of Falsely Discounted First-Year Subscriptions as described in this Complaint. Had Defendant

disclosed to Plaintiffs that the sale prices for the Falsely Discounted First-Year Subscriptions were not in fact discounted from WP's regular prices and, contrary to Defendant's representations, did not provide any savings, Plaintiffs would not have purchased the Falsely Discounted First-Year Subscriptions or would not have paid as much as they did for the Falsely Discounted First-Year Subscriptions.

87.    Defendant's practice of using misleading language and false reference prices when marketing, advertising and selling Falsely Discounted First-Year Subscriptions to misrepresent that the first-year digital subscriptions were and are being sold at discounted prices, have a particular value, quality or worth, and provide a savings from the regular price is unlawful.  It violates, among other statutes and regulations, the California False Advertising Law (California Business & Professions Code §§ 17500, *et seq.*), the California Consumers Legal Remedies Act (specifically, California Civil Code §§ 1770(a)(5), 1770(a)(9), 1770(a)(13) and 1770(a)(16)), and 16 C.F.R. 233.1(a).

88.    Defendant's business practice of marketing, advertising and selling Falsely Discounted First-Year Subscriptions based on false and misleading advertisement language and reference prices, sale prices and savings as described above – *i.e.*, that the product is on sale for a limited time at a price that is discounted from the usual selling price and can be obtained at a savings -- unethically, unscrupulously and based on false premises entices consumers to make purchases that they otherwise would not have made.

89.    Defendant's marketing, advertising and selling of Falsely Discounted First-Year Subscriptions based on false and misleading language and reference prices, sale prices and savings as described above also is a fraudulent business practice as it is likely to deceive reasonable consumers.  A reasonable consumer would be lured into purchasing a product that is offered at a "sale" price that appears to be discounted from the seller's regular, higher price for that product.  Thus, if the consumer was not willing to pay the same amount for the product without its price being listed as a sale price or as discounted from the seller's usual price, then that consumer must have been deceived or misled into believing that this was an opportunity to obtain the product at a savings.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

90.    Defendant is aware that the claims and representations it makes about its first-year digital subscription sale prices, strikethrough reference prices and savings are deceptive, false, and misleading.  Defendant is aware and counts on the reality that consumers are enticed to purchase products when those products are represented as being sold at a discount from the seller's usual, higher prices or are marketed as "deals" or as being on sale for a limited time.

91.    The violations of those laws and the acts and practices described in this Complaint constitute unlawful, unfair, deceptive and fraudulent business acts and practices and unfair competition within the meaning of California Business & Professions Code §§ 17200, *et seq.*

92.    As a direct and proximate result of those acts and practices, Defendant has received and continues to hold as ill-gotten gains money and property belonging to Plaintiffs and the California Class, in that Defendant has profited in those amounts from its unlawful, unfair, deceptive and fraudulent business acts and practices.

93.    California Business & Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of unfair, deceptive and fraudulent business acts and practices and may order restitution by Defendant to Plaintiffs for the practices alleged in this Complaint.  Under California Business & Professions Code §§ 17203 and 17208, Plaintiffs and California Class members are entitled to restitution and restoration of all ill-gotten money and property belonging to Plaintiffs and the California Class.

94.    Plaintiffs' success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiffs sue on behalf of the proposed California Class as well as on behalf of themselves and the general public.

95.    Plaintiffs take upon themselves the enforcement of these laws and lawful claims. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiffs by forcing them to pay attorneys' fees from the recovery in this action.  Therefore, an award of attorneys' fees is appropriate under California Code of Civil Procedure § 1021.5.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1

## THIRD CAUSE OF ACTION
Violations of Consumers Legal Remedies Act
(California Civil Code §§ 1750, *et seq.*)

2

3    96.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein

4    and further allege as follows.

5    97.    Plaintiffs bring this claim individually and on behalf of the California Class.

6    98.    At all relevant times, each Plaintiff was and is a "consumer" as defined in

7    California Civil Code § 1761(d).

8    99.    At all relevant times, Defendant was and is a "person" as defined in California

9    Civil Code § 1761(c).

10    100.    At all relevant times, Defendant's Falsely Discounted First-Year Subscriptions

11    were and are within the meaning of "goods" as defined in California Civil Code § 1761(a).

12    101.    At all relevant times, the purchases of Defendant's Falsely Discounted First-Year

13    Subscriptions by Plaintiffs and California Class members have constituted and continue to

14    constitute "transactions" as defined in California Civil Code § 1761(e).

15    102.    California Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services

16    have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do

17    not have or that a person has a sponsorship, approval, status, affiliation, or connection that the

18    person does not have."  Defendant has violated, and continues to violate, California Civil Code §

19    1770(a)(5) by representing that the Falsely Discounted First-Year Subscriptions on its website

20    have characteristics or benefits that they do not have.  Specifically, by using misleading language

21    and advertising inflated strikethrough prices for Falsely Discounted First-Year Subscriptions sold

22    on its website, WP represents that the value of its Falsely Discounted First-Year Subscriptions is

23    greater than it actually is.

24    103.    California Civil Code § 1770(a)(9) prohibits "[a]dvertising goods or services with

25    intent not to sell them as advertised."  Defendant has violated and continues to violate California

26    Civil Code § 1770(a)(9) by its actions in advertising Falsely Discounted First-Year Subscriptions

27    as being on sale or discounted from a higher reference price when Defendant intends to sell and

28    does in fact sell them at prices that are not discounted but, in reality, are WP's regular and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

customary prices for its first-year digital subscriptions.

104. ***California Civil Code § 1770(a)(13) prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions."*** Defendant has violated, and continues to violate, California Civil Code § 1770(a)(13) by its actions in deceiving consumers into thinking that they are paying a discounted sale price to purchase first-year digital subscriptions valued at the purported reference price. Specifically, Defendant has violated California Civil Code § 1770(a)(13) by engaging in the following unlawful acts and practices:

       a.  Misrepresenting the regular prices of its Falsely Discounted First-Year Subscriptions on the WP's website by advertising misleading strikethrough prices; and

       b.  Advertising limited time discounts and savings that are inflated or nonexistent because they are based on misleading strikethrough reference prices.

105. California Civil Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Specifically, on its website, Defendant has represented and continues to represent that it sells Falsely Discounted First-Year Subscriptions at specified prices that are discounted from advertised strikethrough reference prices. In fact, however, WP does not sell, nor does it intend to sell, the Falsely Discounted First-Year Subscriptions at an actual discount from its regular selling price because the advertised "sale" prices ***are WP's regular selling prices*** and the purported "savings" are fictitious. By making those misrepresentations, Defendant has violated and continues to violate California Civil Code § 1770(a)(16).

106. Defendant's misrepresentations and omissions were and are uniform as to the marketing, advertising and selling of all Falsely Discounted First-Year Subscriptions and were and are made with the intent to deceive Plaintiffs and the California Class and to deprive the Class members of their legal rights and money. Plaintiffs and the members of the California Class acted reasonably when they purchased Falsely Discounted First-Year Subscriptions from

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Defendant while trusting and believing that Defendant's representations about its first-year digital subscriptions were true and lawful.

107.    Under California Civil Code § 1780(a), Plaintiffs and the California Class seek injunctive and equitable relief for Defendant's violations of the California Consumers Legal Remedies Act.

108.    On October 5, 2023, Plaintiff sent Defendant a California Civil Code § 1782(a) notice advising Defendant of its violations of California Civil Code § 1770. Because Defendant failed to take corrective action within 30 days of its receipt of the demand letter, Plaintiff seeks damages and other relief as permitted under California Civil Code §§ 1780 and 1782(d).

**FOURTH CAUSE OF ACTION**
Violations of the D.C. Consumer Protection Procedures Act ("CPPA"),
(D.C. Code §§ 28-3901, *et seq.*)

109.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

110.    Defendant is a "person" within the meaning of D.C. Code § 28-3901(a)(1), is a merchant under § 28-3901(a)(3), and provides "goods and services" within the meaning of § 28-3901(a)(7).

111.    Each of the Plaintiffs, within the meaning of D.C. Code §§ 28-3901(a)(1) and (a)(2) and 28-3905(k)(1) is a "person" and a "consumer" who may file an action to enforce the CPPA.

112.    A CPPA violation occurs when a person "engage[s] in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby …" D.C. Code § 28-3904.

113.    Defendant's business practice of marketing, advertising and selling Falsely Discounted First-Year Subscriptions based on false and misleading language and reference prices, sale prices and savings as described above is an unfair, unlawful and deceptive trade practice that violates CPPA, D.C. Code § 28-3904, and specifically the following subsections:

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1         (j)  make false or misleading representations of fact concerning the reasons

2             for, existence of, or amounts of price reductions, or the price in comparison

3             to price of competitors or one's own price at a past or future time; and

4         (l)  falsely state the reasons for offering or supplying goods or services at

5             sale or discount prices.

6     114.    Plaintiffs and the Nationwide Class Members purchased WP's Falsely Discounted

7 First-Year Subscriptions for their personal use.

8     115.    Plaintiffs and the Nationwide Class members therefore have been injured and

9 have suffered damages in an amount to be proven at trial, including treble damages or $1,500 per

10 violation, whichever is greater, and reasonable attorneys' fees. D.C. Code §§ 28-3905(k)(2)(A)(i)

11 and (2)(B).

12    116.    Further, Defendant's use of the unfair and deceptive pricing scheme on its

13 subscription website, as alleged above, has deceived and is likely to continue to deceive the

14 consuming public in violation of D.C. Code § 28-3904.  A reasonable consumer would be lured

15 into purchasing a product that is offered at a "sale" price that appears to be discounted from the

16 seller's regular, higher price for that product.  Thus, if the consumer was not willing to pay the

17 same amount for the product without its price being listed as a sale price or as discounted from

18 the seller's usual price, that consumer must have been deceived or misled into believing that this

19 was an opportunity to obtain the product at a savings.

20                       **PRAYER FOR RELIEF**

21     WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, pray for

22 the following relief:

23         a.  An order certifying the California Class and the Nationwide Class, appointing

24             Plaintiffs Joseph Hirlinger and Guy Ball as the representatives of the California

25             Class and the Nationwide Class, and appointing counsel for Plaintiffs as lead

26             counsel for the Classes;

27         b.  Disgorgement of profits and restitution and restoration of all costs incurred, sums

28             or property unlawfully withheld, and losses caused by the acts and practices that

violated California Business & Professions Code §§ 17500, *et seq.*;

c.  Disgorgement of profits and restitution and restoration of all costs incurred, sums or property unlawfully withheld, and/or losses caused by the acts and practices that violated California Business & Professions Code §§ 17200, *et seq.*;

d.  Equitable monetary relief arising from the acts and practices that violated California Civil Code § 1770;

e.  Damages as permitted by California Civil Code §§ 1780 and 1782(d);

f.  Damages as permitted by D.C. Code § 28-3905(k)(2)(A)(i).

g.  Payment of costs of the suit;

h.  Payment of attorneys' fees and costs under California Code of Civil Procedure § 1021.5 and California Civil Code § 1780(e);

i.  Payment of attorneys' fees under D.C. Code § 28-3905(k)(2)(B).

j.  An award of pre- and post-judgment interest to the extent allowed by law; and

k.  Such other or further relief as the Court may deem proper.

Respectfully submitted,

Dated: July 1, 2024

**KELLER GROVER LLP**

By: _____

ERIC A. GROVER
*Counsel for Plaintiffs*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

## <u>JURY DEMAND</u>

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: July 1, 2024

**KELLER GROVER LLP**

By: _____

ERIC A. GROVER
*Counsel for Plaintiffs*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861