Sheri Pan (SBN 316136)
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2341
Facsimile: (415) 636-5965
sheri@zwillgen.com

Jacob Sommer (*pro hac vice*)
jake@zwillgen.com
Zach Lerner (*pro hac vice* forthcoming)
zach@zwillgen.com
Madeline Rana (*pro hac vice* forthcoming)
madeline@zwillgen.com
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 706-5233

Attorneys for Defendant
**WP Company LLC**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH HIRLINGER and GUY BALL, individually and on behalf of classes of similarly situated individuals, <br><br> *Plaintiffs*, <br><br> v. <br><br> WP COMPANY LLC; and DOES 1 through 100, inclusive, <br><br> *Defendant*. | Case No. 3:23-cv-05963-AMO <br><br> **DEFENDANT WP COMPANY LLC'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> Judge: Hon. Araceli Martinez-Olguin <br> Hearing Date: January 16, 2025 <br> Time: 2:00 PM <br> Courtroom: 10 |

*United States District Court*
*Northern District of California*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 16, 2025, or as soon thereafter as this matter may be heard, before the Honorable Araceli Martinez-Olguin in Courtroom 10 of this Court located on the 19th Floor of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant WP Company LLC will, and hereby does, move the Court for an order granting its Motion to Dismiss the First Amended Complaint. The Motion is based on Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiffs' allegations fail to state a valid claim. This Motion will be based upon this Notice; the accompanying Memorandum of Points and Authorities; the Declaration of Anjali Iyer; the complete record in this action; and such other matters and arguments as may come before the Court, including those raised in connection with reply briefing and oral argument relating to this Motion.

Dated: August 5, 2024

**ZWILLGEN LAW LLP**

By:  /s/ *Sheri Pan*
Sheri Pan (SBN 316136)
sheri@zwillgen.com

**Attorney for Defendant**
WP Company LLC

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

     A.    The Original Complaint and the Court's Order of Dismissal ................... 2

     B.    The Amended Complaint ............................................................... 3

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT .................................................................................................................. 4

    **I.**    Plaintiffs' Claims Should Be Dismissed for Failure to State a Claim. .................. 4

     A.    Plaintiffs do not plausibly allege that TWP advertised a false reference price or former price. ...................................................... 4

     B.    Plaintiffs' claims under the FAL, UCL, and CLRA also fail because they do not plausibly allege that a reasonable consumer would have been deceived by the strikethrough prices. ................................. 12

     C.    The CLRA does not apply because digital subscriptions sold by TWP are not goods or services under the CLRA. ..................................... 13

     D.    Plaintiffs' claims under the DC CPPA fail because they identify no false or misleading material representations or omissions. ....................... 14

CONCLUSION ............................................................................................................. 15

United States District Court
Northern District of California

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alicke v. MCI Commc'ns Corp.*,
    111 F.3d 909 (D.C. Cir. 1997) ............................................................. 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................. 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................. 4

*Branca v. Nordstrom, Inc.*,
    2015 WL 1841231 (S.D. Cal. Mar. 20, 2015) ............................................. 8, 9

*Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ............................................................. 4, 12

*Carvalho v. HP, Inc.*,
    2022 WL 2290595 (N.D. Cal. June 24, 2022) ................................................. 8

*Charbonnet v. Omni Hotels and Resorts*,
    2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) ................................................ 13

*Ebeid, ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ............................................................. 4

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ............................................................. 12

*Ferrington v. McAfee, Inc.*,
    2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ................................................. 14

*Fisher v. Eddie Bauer LLC*,
    2020 WL 4218228 (S.D. Cal. Feb. 3, 2020) ................................................ 9

*Freeman v. Indochino Apparel, Inc.*,
    443 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................ 12

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ............................................................. 12, 13

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................ 14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................ 12

DEFENDANT WP COMPANY LLC'S NOTICE OF MOTION AND MEMO IN SUPPORT OF MOTION TO DISMISS; CASE NO. 3:23-cv-05963-AMO

*United States District Court*
*Northern District of California*

*Jacobo v. Ross Stores, Inc.*,
    2016 WL 3482041 (C.D. Cal. Feb. 23, 2016) ...................................................... 8, 9

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................... 4

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) .............................................................................. 12

*Mai v. Supercell Oy*,
    648 F. Supp. 3d 1130 (N.D. Cal. 2023) .............................................................. 14

*Rubenstein v. Neiman Marcus Grp. LLC*,
    2015 WL 1841254 (C.D. Cal. Mar. 2, 2015) ...................................................... 8, 9

*Saucier v. Countrywide Home Loans*,
    64 A.3d 428 (D.C. 2013) ..................................................................................... 14

*Warren v. Fox Fam. Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ................................................................. 4, 10, 11

*Woulfe v. Universal City Studios LLC*,
    2022 WL 18216089 (C.D. Cal. Dec. 20, 2022) .................................................. 14

**Statutes**

Cal. Consumer Legal Remedies Act
    Cal. Civ. Code § 1761 ......................................................................................... 13
    Cal. Civ. Code § 1770 ..................................................................................... 5, 13

Cal. False Advertising Law
    Cal. Bus. & Prof. Code § 17501 ........................................................................ 5, 8

D.C. Consumer Protection Procedures Act
    D.C. Code § 28-3904............................................................................................ 14, 15

**Other Authorities**

Fed. R. Civ. P. 8 .......................................................................................................... 4

Fed. R. Civ. P. 9 ....................................................................................................... 4, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Plaintiffs' First Amended Complaint ("FAC") is little more than a cynical attempt to replead the ***same*** factual allegations and legal theories from the original complaint that the Court has already determined were insufficient to state a claim. Indeed, a simple comparison between the original complaint and the FAC makes clear that Plaintiffs' entire case is still based on the same allegedly false pricing statements for the exact same product—an annual "All-Access Digital Subscription" offered by Defendant WP Company LLC d/b/a The Washington Post ("TWP"), that begins at an introductory rate and then renews at a higher price after the first year. *See* ECF No. 27 ("Redline of Original Complaint"). When this Court dismissed the original complaint, it examined these precise allegations and held that consumers purchasing the All-Access Digital Subscription were presented with a struck-through price that "clearly and unambiguously refer[red] to the future renewal price for the subscription," alongside a discounted introductory price, before they make their purchase. Order Granting Mot. to Dismiss at 9, ECF No. 22 ("Order"). The Court held that the struck-through price shown in the checkout flow was thus "not a false reference point—it represent[ed] the regular rate for the subscription charged to consumers following the first year." *Id.* at 10. Accordingly, the claims were meritless.

Plaintiffs' FAC responds by glibly rebranding the "All-Access Digital Subscription" as a "first-year subscription purchase" and claiming that Plaintiffs were deceived into believing that the first-year subscriptions they purchased are "on sale for a limited time and . . . are sold at substantially higher prices." First Amended Complaint at 2, ECF No. 26 ("FAC"). But they tried peddling this to the Court once already and were soundly rejected. As the Court found in its Order, "the purported distinction between 'first-year' subscriptions and 'renewal' subscriptions is one of Plaintiffs' own invention." Order at 10. The FAC does nothing to alter this conclusion, as it rests on the same screenshots and pricing descriptions as the original complaint did. Like the original complaint, the FAC's allegations do not include any mention of a "first-year subscription" made by TWP—because there never was such a product. And, by adding no new statements, disclosures, or screenshots to support this purported distinction between "first-year" and "renewal" subscriptions, Plaintiffs tacitly concede this fatal defect.

DEFENDANT WP COMPANY LLC'S NOTICE OF MOTION AND MEMO IN SUPPORT OF MOTION TO DISMISS; CASE NO. 3:23-cv-05963-AMO

Worse still, to the extent the FAC sprinkles in new allegations that TWP's "limited time" offers were not actually for a limited time, those are belied by the fact that the only image in the FAC advertising a "limited time" offer showcases TWP's Black Friday sale. The other TWP website screenshots in the FAC show higher introductory prices, and the Black Friday sale (perhaps the most obvious limited-time sale in American commerce) was self-evidently a "limited time" offer. There is also no allegation that either of the named Plaintiffs subscribed after viewing such an offer.

At its core, Plaintiffs' FAC flouts this Court's dismissal order in which the Court determined that an invented "first year subscription" is not sufficient to state a claim in light of the other disclosures TWP made. This Court previously held that TWP's strikethrough pricing refers to a renewal price—and Plaintiff's efforts to relabel TWP's offerings without alleging any new supporting *facts* does not provide any basis for changing this Court's conclusion that the struck-through price referred to the renewal price, not a former price. Indeed, the FAC includes the same Checkout Page containing the same disclosures regarding the nature of TWP's subscriptions. Adding "magic words" to the same allegations does not support changing this Court's prior ruling finding the nature of the strikethrough prices clear. Because this alleged distinction between "first-year subscriptions" and subscription renewals is baseless, this Court should dismiss the FAC with prejudice.

## BACKGROUND

### A. The Original Complaint and the Court's Order of Dismissal

Plaintiffs filed their original Complaint in the Superior Court of the State of California for the County of San Francisco (Notice of Removal, ECF No. 1-1) on October 6, 2023, alleging the same theory of liability, under the same causes of action, as they now are set forth in the FAC. On June 10, 2024, the Court granted TWP's motion to dismiss the Complaint, finding that the strikethrough prices on TWP's website "clearly and unambiguously refer[] to the future renewal price for the subscription," and are therefore not false reference prices. Order at 9. The Court recognized that the struck-through price shown in the checkout flow "is not a false reference point—it represents the regular rate for the subscription charged to consumers following the first

2

United States District Court
Northern District of California

year." *Id.* at 10. "Because potential purchasers of a TWP subscription must interact with the screen that Plaintiffs include at paragraph 47 of the Complaint," the Court concluded that "they are made aware that subscriptions begin at a lower introductory rate, then renew at the full price, before they make their purchase." *Id.* The Court also found that any "purported distinction between 'first-year' subscriptions and 'renewal' subscriptions is one of Plaintiffs' own invention." *Id.* The Court granted Plaintiffs leave to file an amended complaint but prohibited them from adding additional claims without leave of the Court or TWP's stipulation. *Id.* at 12.

### B.  The Amended Complaint

Plaintiffs filed the FAC on July 1, 2024. The FAC lays out essentially the same factual scenario as alleged in the original Complaint (which we will not repeat here) with three tweaks. First, Plaintiffs invent a second product, the so-called "first-year subscription," which they attempt to distinguish from a subscription renewal and assert that TWP rarely sells "first-year subscriptions" at the full, struck-through price. *E.g.*, FAC ¶¶ 3–5. Second, they narrow the class definition to include only "first-year subscribers." *Id.* ¶ 51. Third, Plaintiffs highlight language that occasionally appears on TWP's website such as "Best. Deal. Ever.," "special offer," and "limited time," alleging that such language is used to mislead consumers into believing that they are receiving a uniquely good deal. *Id.* ¶¶ 4, 72. These allegations appear to be based on the screenshots in ¶ 13 of the FAC, where that language is used in the context of TWP's November 2021 Black Friday sale—during which TWP offered lower-than-usual introductory discounts. *See id.* ¶ 13. Notably, Plaintiffs' alleged purchases of the "All-Access Digital Subscriptions" did not take place anywhere near November 2021, nor do they even allege having seen such promotional language. *See id.* ¶¶ 11–12.

The FAC, like Plaintiffs' original complaint, focuses on the same pages in the same sign-up flow—each with the same disclosures at the bottom of the pages, the same checkout flow, and the same agreement to TWP's terms and conditions—including an agreement to pay the struck-through price on renewal. *E.g.*, FAC ¶¶ 13, 32, 45.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The rule that a court accept as true allegations in a complaint is "inapplicable to legal conclusions," *id.*, and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("We do not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."). Nor should a court "accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Warren*, 328 F.3d at 1139. Dismissal is warranted where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

As this Court held in its previous order, Plaintiffs' claims for fraudulent misrepresentation, must satisfy Rule 9(b)'s heightened pleading standard. Order at 7; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). As such, Plaintiffs "must state with particularity the circumstances constituting fraud," meaning that the "pleading must identify 'the who, what, when, where, and how of the misconduct charged.'" *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011) (quoting *Ebeid, ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)); Fed. R. Civ. P. 9(b).

**ARGUMENT**

**I.    Plaintiffs' Claims Should Be Dismissed for Failure to State a Claim.**

**A.    Plaintiffs do not plausibly allege that TWP advertised a false reference price or former price.**

To state a claim under the FAL, the UCL,[1] or the CLRA, Plaintiffs must plausibly allege that TWP advertised a former price that was not the prevailing market price within the three months preceding the publication of the advertisement (FAL and UCL), and that TWP made false

---

[1] Plaintiffs' claim under the UCL is based on TWP's purported violations of the FAL. *See* FAC ¶ 87.

DEFENDANT WP COMPANY LLC'S NOTICE OF MOTION AND MEMO IN SUPPORT OF MOTION TO DISMISS; CASE NO. 3:23-cv-05963-AMO

United States District Court
Northern District of California

or misleading statements about the reasons for, existence of, or amount of a price reduction (CLRA). Cal. Bus. & Prof. Code § 17501; Cal. Civ. Code § 1770(a)(13).[2] Plaintiffs fail to do so.

As this Court cogently explained in its prior order, TWP did no such thing, and none of the new allegations in the FAC provide a reason to change that ruling. As before, Plaintiffs' claims center on the struck-through price—the sole difference being that now Plaintiffs invent a new product by deeming the struck-through price an offer for a "first-year subscription" rather than simply the price for a "subscription." Because Plaintiffs' FAC is not fundamentally different from the original complaint, we start with this Court's prior ruling.

### i.  Plaintiffs' claims based on former prices remain deficient.

In dismissing Plaintiffs' original complaint, this Court found that Plaintiffs "misapprehend[ed] the struck through $120 as a former price. The $120 figure clearly and unambiguously refers to the future renewal price for the subscription. . . . Although Plaintiffs allege that TWP 'never or almost never' sold subscriptions at the strike through price (Compl. ¶ 3), TWP's disclosures make clear that TWP regularly charges the strikethrough price for subscription renewal payments." Order at 9. The FAC makes little change to this allegation, revising it only as follows:

> In reality, *WP continuously sells* the *first-year* subscriptions ~~continuously are sold by WP~~ on its website at or near the falsely claimed 'sale' price and never or almost never ~~are sold~~ *sells them* at the purported regular and customary price~~.~~ *shown in the ad*. The *first-year* digital subscriptions that WP advertised and continues to advertise on its website as discounted from false reference prices are referred to in this *amended* complaint as the 'Falsely Discounted *First-Year* Subscriptions.'

FAC ¶ 3 (additions to original complaint in italics, deletions struck through), *see also* ECF No. 27 ¶ 3 ("Redline of Original Complaint") ¶ 3. But none of these changes provide a reason to alter this Court's prior ruling regarding the nature of TWP's All-Access Digital Subscription or the struck-through pricing. The FAC, as before, still "misapprehends" the struck-through price as a former

---

[2] Plaintiffs also allege violations of Cal. Civ. Code § 1770(a)(16), which requires that TWP "represent[ed] that the subject of a transaction has been supplied in accordance with a previous representation when it has not." To the extent this refers to TWP's alleged misrepresentations regarding the "former" price of its subscriptions (in reality, the renewal price), Plaintiffs' claims fail for the same reasons as set forth herein.

price—this time, it just tries to invent a new product by labelling the subscription this Court already addressed a "first-year subscription." But this Court already held that the All-Access Digital Subscription is a renewing subscription—and simply relabeling it is not sufficient to change the Court's prior ruling.

Most significantly, the FAC makes no actual changes to the language the Court relied on in finding that the struck-through prices are not misleading, because they clearly refer to a *renewal* price. As before, Plaintiffs include the following screenshot in their Amended Complaint:



FAC ¶ 45. Despite this Court's admonitions in its order, the FAC, like the original complaint, omits the bottom of this screen. As this Court is aware, the full version of this image shows that subscribers see additional disclosures driving home the point that the struck-through price is the *renewal price. See* Order at 9–10; Iyer Decl. ¶ 5 & Ex. 2.[3] Here, as was the case in the context of

---

[3] As set forth in the accompanying Request for Judicial Notice, TWP asks the Court to take judicial notice of the Checkout Page.

DEFENDANT WP COMPANY LLC'S NOTICE OF MOTION AND MEMO IN SUPPORT OF MOTION TO DISMISS; CASE NO. 3:23-cv-05963-AMO

the original complaint, TWP discloses and subscribers affirmatively agree to the precise offer described in the allegedly misleading statements:

> By subscribing, you agree to the above terms, the Terms of Service, Digital Products Terms of Sale & Privacy Policy. **You agree to be charged $40 for one year, then $120 every year thereafter.** Sales tax may apply. **Your subscription will renew automatically until you cancel.** You can cancel by selecting "Cancel Subscription" under "Subscription & Billing" in your account. To avoid future charges, you must cancel before your next renewal date. No refunds for partial periods unless required by law.

*Id.* (emphasis in original).

The FAC does nothing to address the fact that TWP's Terms of Sale for Digital Products ("Terms"),[4] which govern all digital subscriptions (and are linked in the paragraph above), also disclose this introductory discount as relative to the renewal price. Section 3(b) states, "For example, you authorize us to charge your Payment Method the promotional rate disclosed on the subscription screen for the agreed upon promotional Billing Periods (if applicable) and the regular subscription rate in subsequent Billing Periods, each with applicable taxes." Iyer Decl. Ex. 1, at § 3(b). Section 4 also provides, "If your subscription includes a promotional rate, you will be charged the promotional rate for the agreed upon number of Billing Periods and upon completion of those Billing Periods, your subscription will continue to automatically renew at the regular rate." *Id.* § 4. As reflected at the point of sale and in TWP's Terms, subscribers are charged the full price—shown as a strikethrough price at the point of sale—for renewals of their subscription. Plaintiffs make no new allegations showing that members of the putative class did not see these disclosures or agree to these Terms.

The FAC's allegations thus belie Plaintiffs' conclusory assertion that TWP falsely advertises the prices of its "first-year subscriptions." A subscriber does not buy only a "first-year subscription" from TWP and later buy a renewal subscription. Instead, the FAC reveals the opposite: a consumer purchases an automatically renewing subscription and agrees, at the time of purchase, to pay the full price upon renewal. *See* FAC ¶ 45. Plaintiffs Hirlinger and Ball, for example, allegedly purchased All-Access Digital Subscriptions. *Id.* ¶¶ 11–12. The image included

---

[4] As set forth in the accompanying Request for Judicial Notice, TWP asks the Court to take judicial notice of the Terms.

7

United States District Court
Northern District of California

at ¶ 45 of the FAC makes clear that All-Access Digital Subscriptions are automatically renewing subscriptions with an introductory discount for the first year. *See id.* ¶ 45.

Despite their minor modifications to the complaint, Plaintiffs do not plausibly allege that the strikethrough prices are anything other than references to the renewal prices they agreed to pay as part of their subscriptions. When disclaimers or other contextual language make clear that a reference price is not a former price, § 17501 does not apply. *Carvalho v. HP, Inc.* remains instructive. In that case the court considered strikethrough prices that the defendant disclaimed at the bottom of the website were the manufacturer's suggested retail prices ("MSRPs"), and not former prices. No. 21-CV-08015-BLF, 2022 WL 2290595, at *5 (N.D. Cal. June 24, 2022). The court concluded that "[b]ecause the prices are in fact MSRPs and not 'former price[s],' HP could never be liable under §17501, which applies only to a 'former price[],' regardless of how a reasonable consumer interpreted the advertisements." *Id.* Similarly, as this Court recognized in its Order, courts regularly reject § 17501 claims based on advertisements using "compare at" or similar language with regard to prices. *E.g.*, *Jacobo v. Ross Stores, Inc.*, No. 15–cv–04701–MWF–AGR, 2016 WL 3482041, at *2, *8 (C.D. Cal. Feb. 23, 2016) (dismissing claim that defendant violated § 17501 by using a "Compare At" price to show the amount charged for similar products by other merchants in the area); *Branca v. Nordstrom, Inc.*, No. 14-cv-02062, 2015 WL 1841231, at *6–7 (S.D. Cal. Mar. 20, 2015) (dismissing claim that "the 'Compare At' price listed on the Nordstrom Rack price tags . . . is likely to deceive reasonable consumers into believing the listed 'Compare At' price is the former price at which Nordstrom or other retailers previously sold the same merchandise"); *Rubenstein v. Neiman Marcus Grp. LLC*, No. 14-cv-07155, 2015 WL 1841254, at *3, *5–6 (C.D. Cal. Mar. 2, 2015) (rejecting claim that the "Compared To" advertising used at defendant's outlet store could be "interpreted by reasonable consumers to be a price comparison with the price of the exact same product when it was previously for sale at [the] defendant's regular retail store").

Nothing in the FAC alters the content or context of the explanatory disclosures TWP made here, all of which remain even more obvious than the disclaimer at the bottom of a website in *HP* or the words "compare at" or "compared to" in *Jacobo, Branca,* and *Rubenstein*. First, as this

8

Court has recognized, the fundamental nature of the transaction at issue here is different. *See* Order at 9–10. TWP is not selling a product where consumers should expect to pay once: it is selling an ongoing subscription for which subscribers agree, at the time of purchase, to pay the struck-through price in the future. Indeed, as this Court has already observed, *Plaintiffs* invented a new so-called first-year subscription product (*id.* at 10), and no allegation in the FAC points to anywhere TWP advertised its digital subscriptions as such. There are no new *facts* alleged in the FAC to change this analysis—and relabeling the same allegations is insufficient. This case thus remains different from a strikethrough pricing case involving the sale of a single retail product. *Cf. Fisher v. Eddie Bauer LLC*, No. 19CV857 JM (WVG), 2020 WL 4218228, at *1, *3 (S.D. Cal. Feb. 3, 2020) (denying motion to dismiss false advertising claims based on defendant's practice of advertising items in outlet store at "50% off" and including 50% discount on receipt, even though items had never been sold at purported "full" price).

Second, as shown in the image at ¶ 45 of the FAC (see above), and as was the case in ¶ 47 of the original complaint (which incorporated the same screenshot), the strikethrough prices are characterized not as former prices but as the full price for an ongoing subscription that the consumer would be charged after the introductory discount period. *See* FAC ¶ 45. That disclosure appears right next to the strikethrough price, in two prominent locations on the Checkout Page, each above the button that a consumer must click to proceed with purchasing their subscription. *See id.*; Iyer Decl. ¶ 5 & Ex. 2. The facts in the FAC are the same as the key facts in the original complaint that the Court relied on in finding that there was no confusion here.

Other images included in the FAC are no different and do not indicate that the strikethrough prices are former prices or conflict with this statement—because none of the statements Plaintiffs identify refer to the strikethrough prices in any way as former prices. *See* FAC ¶¶ 13, 32. Rather, at every step of the enrollment process, TWP discloses that new subscribers receive an introductory discount off the regular rate to encourage them to begin a new subscription. *See id.* ¶ 45. The strikethrough prices are thus not a falsely advertised *former* price. The Court need not accept Plaintiffs' conclusory allegations to the contrary when they are contradicted by documents included in the FAC. *Warren*, 328 F.3d at 1139. The minor revisions

9

United States District Court
Northern District of California

Plaintiffs made when amending their complaint do not change the fundamental nature of TWP's subscription pricing or how that pricing model is communicated to consumers.

### ii. Plaintiffs fail to remedy the deficiencies of their claims based on a comparative value theory.

As this Court noted in its order on TWP's motion to dismiss, the image in the complaint (originally at paragraph 47, but included in paragraph 45 of the FAC), "makes clear that All-Access Digital Subscriptions are automatically renewing subscriptions with an introductory discount for the first year." Order at 10. In response, Plaintiffs point to language including "Best. Deal. Ever.," "special offer," and "limited time," alleging that such language is used to mislead consumers about the fair market value of TWP's subscription offerings. FAC ¶¶ 4, 72. But the FAC's allegations demonstrate that Plaintiffs again misapprehend (and misrepresent) what TWP's advertising says. This "limited time" language appears in ¶ 13 of the FAC, in images related to TWP's November 2021 Black Friday sale. *See id.* at ¶ 13. But the introductory prices shown in conjunction with this language—$9.99 for one year (for the annual subscription) or $0.99 every four weeks (for the monthly subscription)—are exactly what TWP says they are: lower, limited time prices. TWP's "Black Friday" prices are significantly lower than the introductory discounts shown elsewhere in the FAC that TWP offered mere weeks later, in December 2021: $40 for the first year of an All-Access Digital subscription (annual) or $4 every four weeks (monthly). *Id.* No claims of "Best. Deal. Ever.," "special offer," or "limited time" appear in conjunction with these December 2021 offers. *Id.* Nor does such language appear adjacent to the February 2022 offers, which also feature the introductory rates of $40 for the first year of an All-Access Digital subscription (annual) or $4 every four weeks (monthly). *Id.* Collectively, these images show that TWP used marketing language about limited time offers accurately: to convey the fact that it was offering a lower-than-usual introductory rate for a limited time during its Black Friday promotion. *See id.* Plaintiffs' efforts to take this language out of context to bolster their deficient claims should not be credited.

Additionally, Plaintiffs Hirlinger and Ball lack standing to bring claims based on the "limited time," "special offer," and "Best. Deal. Ever." language, because they do not allege that

they ever saw these disclosures. *See* FAC ¶¶ 11–12 (describing Plaintiff Hirlinger and Plaintiff Ball's experiences when purchasing TWP subscriptions in June 2021 and February 2023, respectively), ¶¶ 13, 32 (images showing at-issue language dated November 25, 2021). As such, these claims should also be dismissed for lack of standing. *See, e.g., Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012) (citing *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921–22 (N.D. Cal. 2012)) (representative plaintiff has standing to bring claims on behalf of absent class members only where the alleged misrepresentations are substantially similar).

While Plaintiffs assert that TWP consistently offers an introductory discount for the "first-year subscriptions" they have invented, they still make no attempt to grapple with this Court's ruling that, given the subscription nature of TWP's business, TWP subscribers agree to and then often make renewal payments—which, outside the introductory period, are paid at the full (strikethrough) price. *See* Order at 10. Plaintiffs now attempt to limit the scope of relevant purchases to their new "first-year subscription" products which TWP allegedly "never or almost never" sold at the strikethrough price. FAC ¶ 3. But this allegation is based solely on comparing the advertised price to the struck-through price—ignoring that Court previously that the materials included in the original complaint (and now the FAC) make clear that (1) TWP does not sell a standalone first-year subscription, but rather an automatically renewing, ongoing subscription, and (2) the strikethrough price represents the price of subscription renewal payments. *See id.* at 9–10. No amount of relabeling is sufficient—and the Court need not credit conclusory allegations that are "contradicted by documents referred to in the complaint." *Warren*, 328 F.3d at 1139. And there is no allegation in the FAC that Plaintiffs did not (or would not) pay the struck-through renewal price if their subscription renewed.[5] In failing to allege plausibly that TWP did not charge the struck-through price for subscription payments (and if it did not, what TWP charged),

---

[5] While Plaintiff Hirlinger allegedly purchased an annual subscription in June 2021 at the introductory discounted rate of $40 for the first year, the FAC makes no mention of what price he paid in June 2022 or June 2023 if his subscription renewed (which would happen automatically unless he canceled it). *See* FAC ¶ 11. Similarly, while Plaintiff Ball allegedly purchased an annual subscription for an introductory discounted rate of $40 for the first year, the FAC makes no mention of what price he paid in February 2024 if his subscription renewed (which would happen automatically unless he canceled it). *Id.* ¶ 12.

United States District Court
Northern District of California

1    Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading standard, which requires them to "state

2    with particularity the circumstances constituting fraud." *Cafasso, United States ex rel.,* 637 F.3d at

3    1054–55; Fed. R. Civ. P. 9(b).

4         For all these reasons, Plaintiffs fail to plausibly allege a violation of the FAL, and by

5    extension the UCL and the CLRA. These claims should be dismissed.

6    **B.    Plaintiffs' claims under the FAL, UCL, and CLRA also fail because they do not plausibly allege that a reasonable consumer would have been deceived by the strikethrough prices.**

7

8         Plaintiffs' California law claims also fail because they do not plausibly allege that the

9    strikethrough prices would have deceived a reasonable consumer. Deceptive advertising claims

10   brought under the FAL, UCL, or CLRA are governed by a "reasonable consumer" standard under

11   which plaintiffs must plead facts showing that a "significant portion of the general consuming

12   public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v.*

13   *Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see also Freeman v. Time, Inc.*, 68

14   F.3d 285, 289 (9th Cir. 1995). "Likely to deceive implies more than a mere possibility that the

15   advertisement might conceivably be misunderstood by some few consumers viewing it in an

16   unreasonable manner." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.

17   Supp. 2d 942, 967 (S.D. Cal. 2012). Instead, the phrase likely to deceive "indicates that the ad is

18   such that it is probable that a significant portion of the general consuming public or of targeted

19   consumers, acting reasonably in the circumstances, could be misled." *Id.* If the court can

20   determine from the facts alleged that no reasonable consumer would be so deceived, dismissal

21   may be granted. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 (9th Cir. 2016); *Freeman v. Indochino*

22   *Apparel, Inc.*, 443 F. Supp. 3d 1107, 1111 (N.D. Cal. 2020).

23        Here, as noted above, language presented to consumers before they finalized their

24   subscription enrollments made the nature of TWP's introductory discount clear: "**$40** for one year,

25   then **$120** every year thereafter." FAC ¶ 45. As the Court has already concluded, "[t]he pricing

26   structure here is clearly articulated on the point-of-sale website and the webpages linked thereto."

27   Order at 10. Plaintiffs make no attempt to reconcile their claims of deception with TWP's

28   straightforward language disclosing that the struck-through price was the renewal price, not a

12

United States District Court
Northern District of California

1    former price, as the Court held previously. They have thus not alleged that a reasonable consumer

2    would be deceived by TWP's strikethrough pricing.

3          Reasonable consumers are not expected to ignore context and qualifying language such as

4    the conspicuous disclosures present on TWP's Checkout Page; they are expected to read and be

5    aware of such statements. *See Freeman*, 68 F.3d at 289–90 ("The promotions expressly and

6    repeatedly state the conditions which must be met in order to win. None of the qualifying language

7    is hidden or unreadably small. The qualifying language appears immediately next to the

8    representations it qualifies and no reasonable reader could ignore it."); *Charbonnet v. Omni Hotels*

9    *and Resorts*, No. 20-cv-1777, 2020 WL 7385828, at *5 (S.D. Cal. Dec. 16, 2020) (rejecting claim

10   that hotel engaged in an unfair and deceptive "drip pricing" scheme by advertising the basic room

11   rate, without taxes and fees, because the ultimate total cost of booking a room was disclosed

12   before the consumer approved the room reservation; finding that a reasonable consumer would not

13   have been misled by the price advertising). Because Plaintiffs cannot plausibly allege that most of

14   the consumer population would have been misled by TWP's strikethrough prices given the context

15   in which they were presented, the clear disclosure of introductory pricing, and the pre-purchase

16   disclosures in TWP's subscription agreements disclosing the practice, their California claims

17   should be dismissed.

18          **C.      The CLRA does not apply because digital subscriptions sold by TWP are not
                      goods or services under the CLRA.**

19          Although not addressed in the Court's prior order, Plaintiffs' claim under the CLRA also

20   fails because digital subscriptions are not goods or services governed by the CLRA. The CLRA

21   applies only to transactions involving "goods or services." Cal. Civ. Code § 1770(a). "Goods" are

22   defined as "tangible chattels bought or leased for use primarily for personal, family, or household

23   purposes." Cal. Civ. Code § 1761(a). Plaintiffs contend that their digital subscriptions to *The*

24   *Washington Post* constitute "goods" under the CLRA. FAC ¶ 100. But subscribers with digital

25   subscriptions (which are the only subscriptions advertised and sold to California consumers) have

26   access to digital content made available through TWP's website and mobile application. Each of

27   these is a type of software—which is not a "tangible chattel" and thus not a "good" within the

28

DEFENDANT WP COMPANY LLC'S NOTICE OF MOTION AND MEMO IN SUPPORT OF MOTION TO
DISMISS; CASE NO. 3:23-cv-05963-AMO

*United States District Court*
*Northern District of California*

meaning of the CLRA. *See Woulfe v. Universal City Studios LLC*, No. 2:22-CV-00459-SVW-AGR, 2022 WL 18216089, at *15 (C.D. Cal. Dec. 20, 2022) (finding that time-limited license to stream digital copy of film was software or license and thus not a "good" under the CLRA), *reconsideration denied*, No. 2:22-CV-00459-SVW-AGR, 2023 WL 3321752 (C.D. Cal. Mar. 9, 2023). "California law does not support [the] contention that software is a tangible good or a service for purposes of the CLRA . . . ." *Ferrington v. McAfee, Inc.*, No. 10–CV–01455–LHK, 2010 WL 3910169, at *14 (N.D. Cal. Oct. 5, 2010) (holding that an automatically renewing subscription to software was neither a good nor a service under the CLRA); *Mai v. Supercell Oy*, 648 F. Supp. 3d 1130, 1136 (N.D. Cal. 2023) (digital goods not goods or services under the CLRA), *appeal filed*, No. 23-15144 (9th Cir. Feb. 2, 2023); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1070 (N.D. Cal. 2012) ("[T]o the extent Plaintiffs' allegations are based solely on software, Plaintiffs do not have a claim under the CLRA."). Because digital subscriptions are not a "good" within the meaning of the CLRA, Plaintiffs' CLRA claim should be dismissed.

**D.    Plaintiffs' claims under the DC CPPA fail because they identify no false or misleading material representations or omissions.**

Plaintiffs fail to plausibly allege any violations of D.C. Code §§ 28-3904(e), (f), (j), or (l) for the same reasons they cannot state a claim under California law. To state a claim under §§ 28-3904(e) and (f), a plaintiff must establish that the defendant "made a material misrepresentation or omission that has a tendency to mislead." *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997). "With regard to the 'tendency to mislead,' a reasonable consumer generally would not deem an accurate statement to be misleading, and hence, such statement generally would not be actionable under §§ 28-3904(e) and (f)." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013). As explained above, and as this Court found previously, Plaintiffs do not plausibly allege that TWP misrepresented its introductory discount as a former price or a false reference price or anything other than the price subscribers agreed to pay for future renewals. *See supra* § A. As noted above with regard to the California claims, the FAC does not identify any

United States District Court
Northern District of California

1    new inaccurate statements or omissions that would mislead a reasonable consumer. They again fail

2    to state a claim under §§ 28-3904(e) and (f).

3            Plaintiffs' § 28-3904(j) claim similarly fails. To state such a claim, they must allege that

4    TWP made false or misleading representations of fact about the reasons for, existence of, or

5    amounts of price reductions, or the price in comparison to the price of a competitor's or the

6    seller's own past or future price. Plaintiffs did not do so and, as noted with regard to the California

7    claims, there is no change in the FAC that warrants a different result. As shown plainly in the

8    FAC, TWP makes clear that this is an introductory offer. *See* FAC ¶ 45. Plaintiffs thus do not

9    credibly allege that TWP makes any misrepresentations or false statements about the reasons for,

10   existence of, or amount of its price reduction. They thus fail to state a claim under § 28-3904(j).

11           Plaintiffs' § 28-3904(l) claim fares no better. Under this subsection, Plaintiffs must allege

12   that TWP falsely stated the reasons for offering or supplying goods or services at sale or discount

13   prices—but they fail to do so. As the FAC reveals, TWP accurately states that the strikethrough

14   price refers to the price to be charged on renewal, and thus makes no misrepresentations or false

15   statements about the reasons for its price reduction or when the struck-through price will be

16   charged. *See* FAC ¶ 45. Plaintiffs allege no other false statements or misrepresentations about the

17   reason for the strikethrough price. Accordingly, they again fail to state a claim under § 28-3904(l).

18                                        **CONCLUSION**

19           Plaintiffs cannot use smoke and mirrors to conjure up a claim out of nothing—and these

20   superficial amendments are not enough to save their claims. They have failed to provide the

21   factual basis to show that their so-called "first-year" subscription is something more than their

22   own invention. Instead, as was the case with its original complaint, the concept of "first-year

23   subscriptions" is wholly contradicted by the images from TWP's website incorporated into the

24   FAC, which reflect that TWP in fact sells automatically renewing subscriptions that begin with an

25   introductory discount. And their claims that rely on "limited time offer" (and similar) language are

26   belied by other statements in the complaint that show TWP did, in fact, offer these discounts for a

27   limited time. Plaintiffs' amendments do not cure the fundamental deficiencies in their original

28   complaint; they do not, and cannot, plausibly allege that TWP misled consumers through its use of

United States District Court
Northern District of California

15

1   strikethrough pricing. This Court should again dismiss Plaintiffs' complaint, this time with

2   prejudice.

3   DATED: August 5, 2024                          **ZWILLGEN LAW LLP**

4                                                  By: /s/ *Sheri Pan*

5                                                       Sheri Pan (SBN 316136)
                                                        sheri@zwillgen.com
6
7                                                  **Attorney for Defendant**
                                                   WP Company LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WP COMPANY LLC'S NOTICE OF MOTION AND MEMO IN SUPPORT OF MOTION TO
DISMISS; CASE NO. 3:23-cv-05963-AMO

United States District Court
Northern District of California